Petition of TENNESSEE BAR ASSOCIATION for an Order Requiring Annual License Fee of All Practicing Attorneys for Disciplinary Purposes, and (2) Petition of Certain Lawyers for Organization of the State Bar.

Supreme Court of Tennessee.

Dec. 18, 1975.

annual license fee on each attorney licensed to practice law in the State for the purpose of funding the office of investigative counsel. This office would consist of the necessary attorneys, and supporting personnel, required from time-to-time to investigate complaints of unethical practices of lawyers referred to it by the Executive Committee of said bar association. Failure to pay the annual fee would result in suspension of the right to practice law.

In a supplemental petition the bar association asserts that the present Rule 42 of this Court is inadequate and unsatisfactory and seeks to have the Court replace said rule. It proposes that the Court adopt the "Rules of Disciplinary Enforcement" attached to and filed with said supplemental petition.

An intervening petition by thirteen (13) members of the bar of this Court urges that the Court enter an order organizing the State Bar of Tennessee. Subsequently the Court entered orders granting leave to all interested parties to file amicus curiae briefs and gave notice that oral argument would be heard on the issues presented by said petitions.

Numerous briefs, affidavits and letters have been filed in support of and in opposition to petitions. In many instances these filings take a middle ground in favor of some of the affirmative proposals and in opposition to others.

The Court heard oral argument on the issues presented by these petitions on January 23, 1975.

The opposition to any action upon said petitions may be summarized as follows: that the Court has no authority to organize the bar particularly in the face of T.C.A. § 29–110; that the voluntary bar deals with the disciplinary problems of the profession and all other collective concerns of the professions in a satisfactory manner and thus there is no need for compulsory membership

## OPINION

FONES, Chief Justice.

The Tennessee Bar Association has filed a petition requesting this Court to impose an

in a state bar; that the traditional independence of the individual lawyer would be jeopardized and that a unified bar is not sufficiently popular with the lawyers of Tennessee to be successful.

## I.

We will first consider the question of the authority of the Court to organize the bar or to take the intermediate step of imposing an annual license fee for the purpose heretofore stated.

In 1955 the Court's authority to unify the bar was considered in an opinion authored by Mr. Justice Tomlinson, *Petition For Rule Of Court, Etc.*, 199 Tenn. 78, 282 S.W.2d 782 (1955). Again in 1972 this issue was before the Court and was discussed by Mr. Justice Humphreys in a separate concurring opinion to the per curiam opinion, *In re Adoption of Rule of Court, Etc.*, 479 S.W.2d 225 (Tenn.1972).

The 1955 opinion made significant observations bearing upon this Court's authority to unify the bar, but cannot be said to have expressly answered the question. The Court gave controlling consideration to the attitude of the lawyers and to the *enactment*, as distinguished from the *validity*, of Chapter 54, Public Acts of 1955, codified as T.C.A. § 29–110.[1] In short, concluding that a unified bar was not popular with either the lawyers or the Legislature at that time, unification was denied without prejudice.

Then as now, opposing lawyers asserted that this Court's jurisdiction was appellate only and having no original jurisdiction to declare said 1955 act invalid, it must prevail.

Responding thereto the Court said:

"If Courts have inherent power to prescribe qualifications required for the practice of law, it seems to follow, as held by the Supreme Court of Massachusetts, in *Collins v. Godfrey*, 324 Mass. 574, 87 N.E.2d 838, 841, that 'the Supreme Judicial Court, as under the Constitution the highest court in the Commonwealth, is the proper representative of the judicial department and the repository of the power.' This Court's power, then, in this respect is original, rather than appellate."

\* \* \* \* \* \*

"The inherent right of Courts to prescribe qualifications necessary for the practice of law does not mean that the Legislature is without authority in that field." 282 S.W.2d at 784.

\* \* \* \* \* \*

". . . Thus, a legislative requirement that individuals who would practice this profession must first meet certain reasonable conditions and qualifications is only the exercise by the Legislature of the police power with which that department of our government is vested. *Lamb v. Whitaker*, 171 Tenn. 485, 490, 105 S.W.2d 105.

"But the exercise of such authority by the Legislature does not mean that this Court, in the exercise of its authority within the premises, may not require qualifications more extensive than those exacted by the Legislature. Read: Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586–608, and cases there cited.

"In considering, then, whether a legislative enactment with reference to the right to practice law in this State is an exercise by the Legislature of its police power, it may be necessary to keep in mind that it is one thing for a statute to say that individuals must have certain qualifications in order to practice, but an entirely different thing for the statute to say that individuals need not have certain qualifications in order to practice." 282 S.W.2d at 784, 785.

"Requiring qualifications for the practice of law is, as we have seen, a field in

---

1. T.C.A. § 29–110 reads as follows: "No person shall be granted or denied the license or right to practice law in Tennessee be-

cause he or she is or is not a member of any lawful club, association or guild."

which both the legislative and judicial departments of our State may enter. The extent to which the Legislature may go in such field seems to depend upon whether a particular statute enacted by it in this field is a reasonable exercise of the police power of the State. The judicial department, in the exercise of its inherent authority, may require more of the officers of its Courts." *Id.* at 786.

In determining that a unified bar was unpopular with the lawyers, the Court indulged the presumption that the seventy-seven (77%) percent which they found had not expressed an opinion were either positively against it, in doubt as to its wisdom, or indifferent. The Court observed that the public welfare demands cooperation between legislative and judicial branches which had been historically maintained, except perhaps for the privilege tax levied by Act of 1867–8, Chapter 4, resulting in the *Lawyers' Tax Cases*, 55 Tenn. 565 (1875). The Court therefore concluded that it would be *against the public interest* to adopt a rule of compulsory membership in the State Bar of Tennessee.

Turning to the 1972 opinion, the Court-legislative authority issue was not considered in the per curiam memorandum, but was dealt with by Mr. Justice Humphreys in a concurring opinion. Citing appropriate authority, the learned justice noted that this Court, by virtue of its being the Supreme Court of the State has implied or inherent power to make any rule or order reasonably necessary to carry out its expected role as the constitutionally created judicial part of the tri-partite government of this State, including the power to make rules and orders with respect to lawyers and the practice of law to the extent that this is necessary to the functioning of this Court in its constitutional role.

But, he added, that the Court's power did not include the right to ignore T.C.A. § 29–

110 unless bar unification was so necessary that said section amounted to an unconstitutional interference with this Court's power.

On the issue of necessity it was the opinion of Mr. Justice Humphreys that: 1. The case for unification was weaker than the case against it; 2. Functioning without a unified bar since the inception of the Court, no showing was made that historical efficiency of the Court and its attorneys had changed for the worse; 3. Lack of necessity was proven by the fact that the Supreme Courts of a majority of states function without such an association of attorneys [2]; 4. The primary intent of the plan was to regulate the relationship of lawyers with each other; 5. With only a bare majority of lawyers in favor of the plan, great dissension and disharmony and bitter dissatisfaction would result, adversely affecting the function of this Court.

However, the able and respected author of said opinion concluded with the statement that if it should ever appear that a unified bar was necessary, in the constitutional sense, to the function of this Court he would support the right of the Court to unify the bar, even in the face of such a statute.

The following from the case of *Ex parte Garland*, 4 Wallace 333, 71 U.S. 33, 18 L.Ed. 366 (1866), was quoted with approval by Chief Justice Nicholson in the *Lawyers' Tax Cases*:

". . . 'the order of admission is the judgment of the Court that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct.

They hold their office during good behavior, and can only be deprived of it for

2. Factually erroneous; at the time of the opinion twenty-nine states, Puerto Rico and the Virgin Islands had integrated bars. Since said opinion Rhode Island, Montana and the District of Columbia bars have been unified.

misconduct, ascertained and declared by the judgment of the court, after opportunity to be heard has been afforded. Their admission or exclusion is not the exercise of a mere ministerial power, it is the exercise of judicial power. . . .'" 55 Tenn. at 631.

From this base the Court aptly reasoned that lawyers, as officers of the Court and indispensable to its operation, were in fact an arm of the judicial department of government; that the tax in question carrying with it the penalty of forfeiture of the right to practice law for non-payment, posed the potential to destroy an indispensable arm of the judicial department of government and was unconstitutional.

The issuance of a license to practice law by this Court carries with it the clear implication to the public that the judicial department of government is vouching for each lawyer's qualifications, competency and ethics. That is as it should be, because under our adversary judicial system it is essential that each individual lawyer enjoy and deserve the trust and confidence of the public. As so aptly stated by Mr. Justice Tomlinson in *Petition For Rule Of Court, Etc.,* 282 S.W.2d at 784:

"The property, rights, liberties and lives of people are continuously entrusted to lawyers. So, the State is vitally interested in the qualifications and integrity of those into whose hands such vital trusts are continuously placed."

In discussing the inherent powers of the courts, it has been recently suggested that lawyers are the number one in-house resource of our system of courts.

## II.

■ T.C.A. § 29–110 contains that type of prohibited legislation referred to by Mr. Justice Tomlinson in *Petition For Rule of Court, Etc.,* 282 S.W.2d at 784, 785, as, ". . . an entirely different thing for the statute to say that individuals need not have certain qualifications in order to practice." This Court in the exercise of its inherent authority may require more of its officers than the legislature may prescribe in the exercise of its police power. We hold that T.C.A. § 29–110 is an unconstitutional interference with this Court's power, violative of Article II, Sections 1 and 2, Constitution of Tennessee.

For an excellent discussion of this Court's authority and for an analogous application of the principles enunciated in Mr. Justice Tomlinson's opinion, to the constitutionality of T.C.A. § 29–310, see *Cantor v. Brading,* 494 S.W.2d 139 (Tenn.App.1973).

It is the further opinion of this Court that Chapter 422, Acts of 1970 (Adj. S.), a statutory declaration of the constitutional and inherent power of this Court, undergirds the conclusions of law we have reached hereinabove. Particular attention is called to that portion of said act codified as T.C.A. § 16–331(e) and (f).[3]

## III.

■ We have thoroughly considered all contentions questioning this Court's authority to unify or organize the bar of this State and it would unnecessarily prolong this opinion to engage in further discussion thereof. Suffice it to say, it is the same multi-faceted attack that has been launched against unification in every state that has considered the issue.

Unification of the bar has been accomplished by three (3) methods: (1) detailed

---

**3.** T.C.A. § 16–331. Supervisory procedures.—

\* \* \* \* \* \*

e. To take affirmative and appropriate action to correct or alleviate any condition or situation adversely affecting the administration of justice within the state.

f. To take all such other, further and additional action as may be necessary to the orderly administration of justice within the state, whether or not herein or elsewhere enumerated. [Acts 1970 (Adj. S.), ch. 422, § 2.]

statutory enactment, (2) a statute authorizing the state's highest court to unify the bar followed by Court rule, and by (3) Court rule based upon the inherent power of the state's highest court, without statutory authorization.

Nine (9) jurisdictions have unified the bar by method three. Oklahoma is unique in that the legislature of that state unified the bar in 1929, reversed itself in 1939, and the Oklahoma Supreme Court promptly established a unified bar by court rule. *In re Integration of State Bar of Oklahoma*, 185 Okl. 505, 95 P.2d 113 (1939).

There is no difference in the inherent power of this Court and the inherent power of the highest state court of other jurisdictions with respect to matters affecting the bar and the practice of law. No court has held that the highest court of any state is without authority to unify its bar.

In *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), the United States Supreme Court sustained Wisconsin's unified bar from federal constitutional attack based upon Amendments 1 and 14, United States Constitution. Justice Harlan in a separate concurring opinion, in which Justice Frankfurter joined, commented as follows upon the views of two dissenting justices, one of whom found the unified bar concept unconstitutional:

> "For me, there is a short and simple answer to all of this. The *[Railway Employes Dept. v.] Hanson* case, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112, decided by a unanimous Court, surely lays at rest all doubt that a State may Constitutionally condition the right to practice law upon membership in an integrated bar association, a condition fully as justified by state needs as the union shop is by federal needs. Indeed the conclusion reached in *Hanson* with respect to compulsory union membership seems to me *a fortiori* true here, in light of the supervisory powers which the State, through its courts, has traditionally exercised over admission to the practice of law, see *Ko-*

*nigsberg v. State Bar of California,* 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105; *In re Anastaplo,* 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135, and over the conduct of lawyers after admission, see *Cohen v. Hurley,* 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156. The Integrated Bar was in fact treated as such an *a fortiori* case in the *Hanson* opinion itself. Supra, 351 U.S. at page 238, 76 S.Ct. at page 721. So much, indeed, is recognized by the plurality opinion which rejects the contention that Wisconsin could not Constitutionally require appellant, a lawyer, to become and remain a dues-paying member of the State Bar." 367 U.S. at 849, 850, 81 S.Ct. at 1841.

We respectfully overrule all issues raised in this proceeding questioning the authority of the Court to unify the bar of this State or to require annual registration and license fees as a condition to the continued practice of law.

## IV.

■ Thirty-one of our sister states, the District of Columbia, Puerto Rico and the Virgin Islands have fully integrated bars. Arkansas, Illinois, Indiana, Minnesota and Pennsylvania have ordered annual registration and license fees of all practicing lawyers to support disciplinary enforcement. We are the fortieth jurisdiction to require that the burden of regulating the conduct and competency of the profession must be borne by all lawyers. We find, as thirty-nine other jurisdictions have, that the best efforts of voluntary bar associations acting through unpaid individual lawyers and committees cannot perform disciplinary investigations and enforcement at an acceptable level. The present disciplinary procedures of investigation and disposition of charges are inadequate to do justice to the public and the profession. The deficiencies in Rule 42 of this Court are a contributing factor to the ineffectiveness of present procedures.

We follow the lead of our sister states and the recommendation of the American Bar Association Center for Professional Discipline and create an Office of Disciplinary Counsel.

On the date this opinion is released, this Court has adopted a new Rule, Rule 42— Rules of Disciplinary Enforcement—that requires annual registration of lawyers and payment of an annual license fee to support the Office of Disciplinary Counsel and staff.[4]

Rule 42 will be published as an appendix to this opinion.

## V.

Having adopted the disciplinary and registration provisions of Rule 42, we now turn to the question of the further unification or organization of the state bar.

Our research and investigation into this subject reveal that there are in other states a number of different plans as to the structure and organization of unified bars. These plans vary considerably in a number of important areas, including the degree of control of the court of last resort over various aspects of Bar activities. There is not presently before the Court a specific plan recommended by any group or segment of the Bar.

It is our opinion that before making a final decision as to whether complete unification or integration of the Bar should be ordered, the Court should have before it a plan prepared by members of the Bar and one on which the members of the profession generally should be given an opportunity to make comments or suggestions.

Accordingly, we deem it appropriate at this time to retain the question of unification under advisement and to appoint a Commission for the purpose of studying the various types of plans which have been adopted in other states. We request that

this Commission report to this Court not later than February 1, 1976, and recommend to the Court a plan which, in the opinion of the Commission, will best serve the interests of the public and the profession in this state.

Upon receipt by the Court of a plan which, in the opinion of the Court, appears to meet these criteria, the Court will have the text thereof distributed to the members of the profession throughout the state and will provide them, individually or through any existing bar associations or professional organizations desired, opportunity to offer suggestions, criticisms or amendments within in a prescribed period of time. Thereafter the Court will make a final decision as to the adoption of a plan of unification.

COOPER, BROCK and HARBISON, JJ., and CARNEY, Special Justice, concur.

HENRY, J., not participating.

## IN RE: RULE 42—DISCIPLINARY ENFORCEMENT

### ORDER

This Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers and in furtherance thereof present Rule 42 is hereby stricken in its entirety and the following Rules of Disciplinary Enforcement are hereby promulgated.

### MISCONDUCT

### SECTION 1

*Jurisdiction*

1.1 Any attorney admitted to practice law in this State and any attorney specially admitted by a court of this State for a particular proceeding is subject to the disciplinary jurisdiction of the Supreme Court, the Board, the hearing committees, herein-

---

4. Mr. Justice Henry did not participate in this opinion but did participate in the formulation of Rule 42.

after established, and the Circuit and Chancery Court.

1.2 Nothing herein contained shall be construed to deny to any court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt, nor to prohibit any bar association from censuring, suspending or expelling its members from membership.

*Review*

1.3 The respondent or the Board may have a review of the judgment of a hearing committee in the manner provided by T.C.A. § 27–901 et seq., except as otherwise provided herein. The review shall be on the transcript of the evidence before the hearing committee, its findings and judgment and upon such other proof as either party may desire to introduce. The trial judge shall weigh the evidence and determine the facts by the preponderance of the proof. Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal direct to the Supreme Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee. Prior decisions of this Court holding that appeal of disciplinary proceedings must be taken to the Court of Appeals because T.C.A. § 16–408 so requires are expressly overruled.

1.4 An appeal from the recommendation or judgment of a hearing committee must be filed in the circuit or chancery court of the county wherein the office of respondent was located at the time the charges were filed with the Board.

1.5 The Chief Justice shall designate a duly elected and regular trial judge. It shall be his duty to try the case, and enter judgment upon the minutes of the circuit or chancery court of the county where the case is heard, and the judgment shall be effective as if he were the regular presiding judge of said court. The duty is imposed upon the clerks and the regular trial judge to promptly notify the Chief Justice of the filing of an appeal in disciplinary cases.

## SECTION 2

*Disciplinary Districts*

Disciplinary jurisdiction in this State shall be divided into the following districts:

District I—the counties of Johnson, Carter, Cocke, Greene, Hancock, Grainger, Jefferson, Sullivan, Washington, Unicoi, Hawkins, Claiborne, Hamblen and Sevier.

District II—the counties of Campbell, Anderson, Roane, Blount, Morgan, Union, Knox, Loudon and Scott.

District III—the counties of Polk, Hamilton, Sequatchie, Bledsoe, Meigs, Monroe, Bradley, Marion, Grundy, Rhea and McMinn.

District IV—the counties of White, Van Buren, Pickett, Putnam, Overton, Clay, Franklin, Moore, Bedford, Rutherford, Wilson, Trousdale, Warren, Fentress, Cumberland, Smith, Jackson, Coffee, Lincoln, Marshall, Cannon, DeKalb and Macon.

District V—the county of Davidson.

District VI—the counties of Giles, Wayne, Lewis, Maury, Humphreys, Cheatham, Montgomery, Robertson, Lawrence, Perry, Hickman, Dickson, Houston, Stewart, Sumner and Williamson.

District VII—the counties of Henry, Carroll, Henderson, Hardeman, Hardin, Benton, Decatur, Chester, Fayette, McNairy and Madison.

District VIII—the counties of Weakley, Lake, Gibson, Haywood, Tipton, Obion, Dyer, Crockett and Lauderdale.

District IX—the county of Shelby.

## SECTION 3

*Grounds for Discipline*

3.1 The license to practice law in this State is a continuing proclamation by the Court that the holder is fit to be entrusted

with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

3.2 Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Attorney's Oath of Office, the Code of Professional Responsibility of the State of Tennessee, or T.C.A. § 29–308, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

3.3 Conviction of a serious crime shall similarly be grounds for discipline as set forth in Section 14.

### SECTION 4

*Types of Discipline*

Misconduct shall be grounds for:

4.1 Disbarment; or

4.2 Suspension for an appropriate fixed period of time, or for an appropriate fixed period of time and an indefinite period concurrently or thereafter to be determined by the conditions imposed by the judgment. A suspension of three months or less shall not require proof of rehabilitation, a suspension of more than three months shall require proof of rehabilitation to be demonstrated in a reinstatement proceeding. No suspension shall be ordered for a specific period in excess of five years; [1]

4.3 Temporary suspension. On petition of the Disciplinary Board authorized by its Chairman or Vice-Chairman and supported by an affidavit demonstrating facts personally known to affiant showing that an attorney appears to be causing great public harm by misappropriating funds to his own use, or otherwise, the Supreme Court may issue an order with such notice as the Court may prescribe imposing temporary conditions of probation on said attorney or temporarily suspending said attorney, or both. Any order of temporary probation which restricts the attorney maintaining a trust account, shall, when served on any bank maintaining an account against which said attorney may make withdrawals, serve as an injunction to prevent said bank from making further payment from such account or accounts on any obligation except in accordance with restrictions imposed by the Court. Any order of temporary suspension issued under this Rule shall preclude the attorney accepting any new cases but shall not preclude his continuing to represent existing clients during the first 30 days after issuance of such temporary order; however, any fees tendered to such attorney during such 30 day period shall be deposited in a trust fund from which withdrawals may be made only in accordance with restrictions imposed by the Court. The attorney may for good cause request dissolution or amendment of any such temporary order by petition filed with the Supreme Court, a copy of which will be served on the Disciplinary Counsel. Such petition for dissolution shall be set for immediate hearing before the Disciplinary Board or a panel of at least three of its members designated by the Chairman of the Board or in his absence the Vice-Chairman. The Board or its designated panel shall hear such petition forthwith and submit its report and recommendation to the Supreme Court with the utmost speed consistent with due process. Upon receipt of the foregoing report, the Supreme Court shall modify its order if appropriate and continue such provisions of the order as may be appropriate until final disposition of all pending disciplinary charges against said attorney.

4.4 Public censure; or

4.5 Private reprimand; or

4.6 Private informal admonition.

1. See Section 19.

## SECTION 5

*The Disciplinary Board of the Supreme Court of Tennessee*

5.1 The Supreme Court shall appoint from among the licensed practitioners of law in Tennessee a nine member board to be known as "The Disciplinary Board of the Supreme Court of Tennessee" (hereinafter referred to as the "Board"), which shall consist of:

(a) Three members of the bar of this state appointed for an initial term of three years; and

(b) Three members of the bar of this state appointed for an initial term of two years; and

(c) Three members of the bar of this state appointed for an initial term of one year.

Subsequent terms of all members shall be for three years. No member shall serve for more than two consecutive terms. Vacancies shall be filled by the Supreme Court.

5.2 The Supreme Court shall designate one member as Chairman of the Board and another member as Vice-Chairman.

5.3 The Board shall act only with the concurrence of five or more members. Five members shall constitute a quorum.

5.4 Members shall receive no compensation for their services but may be reimbursed for their travel and other expenses incidental to the performance of their duties.

5.5 The board shall exercise the powers and perform the duties conferred and imposed upon it by these Disciplinary Rules, including the power and duty:

(a) To consider and investigate any alleged ground for discipline or alleged incapacity of any attorney called to its attention, or upon its own motion, and to take such action with respect thereto as shall be appropriate to effectuate the purposes of these Disciplinary Rules.

(b) To appoint a Chief Disciplinary Counsel and such Assistant Disciplinary Counsel and staff as may from time-to-time be required to properly perform the functions hereinafter prescribed. The Chief Disciplinary Counsel and Assistant Disciplinary Counsel are hereinafter referred to as "Disciplinary Counsel."

(c) To assign periodically the members of hearing committees within each Disciplinary District to review and approve or modify recommendations by Disciplinary Counsel for dismissals, informal admonitions and institution of formal charges.

(d) To review, upon application by Disciplinary Counsel, a determination by the reviewing member of a hearing committee that a matter should be concluded by dismissal or by private informal admonition without the institution of formal charges.

(e) To privately reprimand attorneys for misconduct.

(f) To adopt rules of procedure not inconsistent with these Rules.

(g) The Board shall, to the extent it deems feasible, consult with officers of local bar associations concerning any appointment it is authorized to make under these Rules.

## SECTION 6

*Hearing Committees*

6.1 The Supreme Court shall appoint one hearing committee within each Disciplinary District. Each committee shall consist of five members of the bar of this state who maintain an office for the practice of law within that District. Members of each hearing committee may be recommended by the President or Board of Directors of the local bar association or associations in the District.

6.2 When a hearing committee is first selected by the Court, three of its members shall be appointed for a term of one year, one member for a term of two years and one member for a term of three years. Thereafter all regular terms shall be three

years and no member shall serve for more than two consecutive three-year terms. A member whose term has expired may continue to serve until the conclusion of any formal hearing commenced before him prior to the expiration of his term. A member who has served two consecutive three-year terms may be reappointed after the expiration of one year. The committee shall act only with the concurrence of a majority of its members. Three members shall constitute a quorum. All formal hearings shall be conducted by three member panels, to be designated by the Board, and each panel so designed shall elect its own Chairman.

6.3 Hearing committees shall have the power and duty:

(a) Through the manner assigned by the Board, to review and approve or modify recommendations by Disciplinary Counsel for dismissals, informal admonitions and institution of formal charges.

(b) To conduct formal hearings into charges of misconduct upon assignment by the Chairman of the Board.[2]

(c) To submit their findings and recommendations, together with the record of the hearing, to the Board.

### SECTION 7

*Disciplinary Counsel*

7.1 Disciplinary Counsel shall be licensed to practice law in Tennessee, but shall not be permitted to engage in private practice, except that the Board may agree to a reasonable period of transition after appointment.

7.2 Disciplinary Counsel shall have the power and duty:

(a) With the approval of the Board, to employ and supervise staff needed for the performance of his duties.

(b) To investigate all matters involving possible misconduct assigned to him by the Chairman or Vice-Chairman of the Board.

(c) To dispose of all matters (subject to review by the reviewing member of a hearing committee) involving alleged misconduct by dismissal, informal admonition, or the prosecution of formal charges before a hearing committee. Except in matters requiring dismissal because the complaint is frivolous and clearly unfounded on its face or falls outside the Board's jurisdiction, no disposition shall be recommended or undertaken by Disciplinary Counsel until the accused attorney shall have been afforded the opportunity to state his position with respect to the allegations against him.

(d) To prosecute all disciplinary proceedings and proceedings to determine incapacity of attorneys before hearing committees, trial courts, and the Supreme Court.

(e) To appear at hearings conducted with respect to petitions for reinstatement of suspended or disbarred attorneys or attorneys transferred to inactive status because of disability, to cross-examine witnesses testifying in support of such petitions, and to marshal and present available evidence, if any, in opposition thereto.

(f) To file with the Supreme Court certificates of conviction of attorneys for crimes.

(g) To maintain permanent records of all matters processed and the disposition thereof.

### SECTION 8

*Procedure*

#### Investigation

8.1 All investigations, whether upon complaint or otherwise, shall be initiated by the Board, acting through its Chairman or Vice-Chairman, and conducted by Disciplinary Counsel. Upon the conclusion of an investigation, Disciplinary Counsel may dismiss, informally admonish the attorney concerned or recommend the prosecution of formal charges before a hearing committee. If the recommended disposition is dismissal or informal admonition, it shall be reviewed

2. See Section 8.2 infra.

by the reviewing member of a hearing committee in the appropriate Disciplinary District who may approve or modify. If the recommended disposition is the prosecution of formal charges before a hearing committee the Board shall review the recommendation and approve or modify. Disciplinary Counsel may appeal to the Board a dismissal or informal admonition directed by a hearing committee member. The Board may determine whether a matter should be concluded by dismissal, informal admonition, or direct that a formal proceeding be instituted before a hearing committee in the appropriate Disciplinary District and assign it to a hearing committee for that purpose. A respondent-attorney (hereinafter "respondent") shall not be entitled to appeal an informal admonition by counsel but he may demand as of right that a formal proceeding be instituted against him before a hearing committee in the appropriate Disciplinary District. In the event of such demand, the admonition shall be vacated and the matter disposed of in the same manner as any other formal hearing instituted before a hearing committee.

### Formal Hearing

8.2 Formal disciplinary proceedings before a hearing committee shall be instituted by Disciplinary Counsel by filing with the Board a petition which shall be sufficiently clear and specific to inform the respondent of the alleged misconduct. A copy of the petition shall be served upon the respondent. The respondent shall serve his answer upon Disciplinary Counsel and file the original with the Board within 20 days after the service of the petition, unless such time is extended by the Chairman. In the event the respondent fails to answer, the charges shall be deemed admitted; provided, however, that a respondent who fails to answer within the time provided may obtain permission of the Chairman to file an answer if such failure to file an answer was attributable to mistake, inadvertence, surprise or excusable neglect.

Following the service of the answer or upon failure to answer, the matter shall be assigned by the Chairman to a hearing committee.

If there are any issues of fact raised by the pleadings or if the respondent requests the opportunity to be heard in mitigation, the hearing committee shall serve a notice of hearing upon Disciplinary Counsel and the respondent, or his counsel, stating the date and place of the hearing at least 15 days in advance thereof. The notice of hearing shall advise the respondent that he is entitled to be represented by counsel, to cross-examine witnesses and to present evidence in his own behalf.

8.3 The hearing committee shall, in every case, submit a record of its proceedings, its findings and judgment, in the form of a final decree of a trial court to the Board within 60 days after the conclusion of its hearing, including the submission of briefs, if any. The Board shall immediately serve a copy of the finding and judgment of the hearing committee upon respondent and his counsel of record, and any appeal therefrom must be filed in the circuit or chancery court having jurisdiction within 60 days of the mailing or service of such judgment.

8.4 If the judgment of the hearing committee or a trial court is that respondent shall be disbarred or suspended for any period of time in excess of three months and no appeal therefrom is perfected within said time, the Board or the trial court shall forward a copy of the decree of the hearing committee or the trial court to the Clerk of the Supreme Court for the grand division in which respondent maintains or maintained an office for the practice of law, and this Court shall enter an order of enforcement of said decree. All other decrees of hearing committees or trial courts shall be duly recorded in permanent records to be maintained by the Board, and shall have the force and effect of an order of this Court. Should any respondent fail to fully comply with such decree the Board shall immediately forward the record and decree to this

Court for enforcement, together with its report of non-compliance.

## SECTION 9

*Complaints Against Board Members*

Complaints against members of the Board involving alleged violations of the Attorney's Oath of Office, the Code of Professional Responsibility or T.C.A. § 29–308 shall be submitted directly to the Supreme Court. Complaints against hearing committee members or Disciplinary Counsel alleging violation of the attorney's oath or the Code of Professional Responsibility shall be submitted directly to the Board.

## SECTION 10

*Refusal of Complainant to Proceed, Compromise, Etc.*

Neither unwillingness nor neglect of the complainant to sign a complaint or to prosecute a charge, nor settlement, or compromise between the complainant and the attorney or restitution by the attorney, shall, in itself, justify abatement of the processing of any complaint.

## SECTION 11

*Matters Involving Related Pending Civil or Criminal Litigation*

Processing of complaints shall not be deferred or abated because of substantial similarity to the material allegations of pending criminal or civil litigation, unless authorized by the Board in its discretion, for good cause shown.

## SECTION 12

*Service*

12.1 Service upon the respondent of the petition in any disciplinary proceeding shall be made by personal service, by any person authorized by the Chairman of the Board, or by registered or certified mail at the address shown in the most recent registration statement filed by respondent pursuant to Section 20.5 or other last known address.

12.2 Service of any other papers or notices required by these Rules shall, unless otherwise provided by these Rules, be made in accordance with Rule 5.02, Tennessee Rules of Civil Procedure.

## SECTION 13

*Subpoena Power, Witnesses and Pre-trial Proceedings*

13.1 Any member of a hearing committee in matters before it, and Disciplinary Counsel in matters under investigation by him, may administer oaths and affirmations and may obtain from the circuit or chancery court having jurisdiction, subpoenas to compel the attendance of witnesses and the production of pertinent books, papers and documents. A respondent may, similarly, obtain subpoenas to compel the attendance of witnesses and the production of pertinent books, papers and documents before a hearing committee after formal disciplinary proceedings are instituted.

13.2 Subpoenas shall clearly indicate on their face that the subpoenas are issued in connection with a confidential investigation under these Rules and that it is regarded as contempt of the Supreme Court or grounds for discipline under these Rules for a person subpoenaed to in any way breach the confidentiality of the investigation. It shall not be regarded as a breach of confidentiality for a person subpoenaed to consult with an attorney.

13.3 The circuit or chancery court in which the attendance or production is required may, upon proper application, enforce the attendance and testimony of any witness and the production of any documents so subpoenaed. Subpoena and witness fees and mileage shall be the same as in the courts of this state.

13.4 Any attack on the validity of a subpoena so issued shall be heard and determined by the court wherein enforcement of the subpoena is being sought.

13.5 Discovery proceedings by the respondent-attorney, prior to institution of proceedings for a formal hearing, may be had upon the order of the Chairman of the Board for good cause shown.

13.6 At the discretion of the hearing committee, a conference may be ordered for the purpose of obtaining admissions or otherwise narrowing the issues presented by the pleadings. Said conference may be held before the chairman of the committee or any member of the committee designated by its chairman.

13.7 With the approval of the hearing committee, testimony may be taken by deposition or by interrogatories if the witness is not subject to service or subpoena or is unable to attend or testify at the hearing because of age, illness or other infirmity. A complete record of the testimony so taken shall be made and preserved.

13.8 The subpoena and deposition procedures shall be subject to the protective requirements of confidentiality provided in Section 25.

## SECTION 14

### Attorneys Convicted of Crimes

14.1 Upon the filing with the Supreme Court of a certificate of conviction demonstrating that an attorney has been convicted of a serious crime as hereinafter defined, the Court shall enter an order immediately suspending the attorney, whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such conviction. Upon good cause shown, the Court may set aside such order restraining the attorney from engaging in the practice of law when it appears in the interest of justice so to do.

14.2 The term "serious crime" shall include any felony under the laws of Tennessee and any other crime a necessary element of which as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

14.3 A certificate of a conviction of an attorney for any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against him based upon the conviction.

14.4 Upon the receipt of a certificate of conviction of an attorney for a serious crime, the Court shall in addition to suspending him in accordance with the provisions of Section 14.1 of this Rule, also refer the matter to the Board for the institution of a formal proceeding before a hearing committee in which the sole issue to be determined shall be the extent of the final discipline to be imposed, provided that a disciplinary proceeding so instituted will not be brought to hearing until all appeals from the conviction are concluded.

14.5 Upon receipt of a certificate of a conviction of an attorney for a crime not constituting a serious crime, the Court shall refer the matter to the Board for whatever action it may deem warranted, including the institution of an investigation by Disciplinary Counsel, or a formal proceeding before a hearing committee, provided, however, that the Court may in its discretion make no reference with respect to convictions for minor offenses.

14.6 An attorney suspended under the provisions of Section 14.1 of this Rule will be reinstated immediately upon the filing of a certificate demonstrating that the underlying conviction of a serious crime has been reversed but the reinstatement will not terminate any formal proceeding then pending against the attorney, the disposition of which shall be determined by the hearing committee and the Board on the basis of the available evidence.

14.7 The clerk of any court in this state in which an attorney is convicted of a crime shall within ten days of said conviction transmit a certificate thereof to this Court.

14.8 Upon being advised that an attorney subject to the disciplinary jurisdiction of this Court has been convicted of a crime, Disciplinary Counsel shall determine whether the clerk of the court where the conviction occurred has forwarded a certificate to this Court in accordance with the provision of Section 14.7 of this Rule. If the certificate has not been forwarded by the clerk or if the conviction occurred in another jurisdiction, it shall be the responsibility of the Disciplinary Counsel to obtain a certificate of the conviction and to transmit it to this Court.

14.9 An order suspending an attorney from the practice of law pursuant to this Rule shall not constitute a suspension of the attorney for the purpose of Section 18 unless this Court shall so order.

## SECTION 15

### Disbarment by Consent of Attorneys Under Disciplinary Investigation or Prosecution

15.1 An attorney who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may consent to disbarment, but only by delivering to the Board an affidavit stating that he desires to consent to disbarment and that:

(a) His consent is freely and voluntarily rendered; he is not being subjected to coercion or duress; he is fully aware of the implications of submitting his consent;

(b) He is aware that there is a presently pending investigation into, or proceeding involving allegations that there exist grounds for his discipline the nature of which he shall specifically set forth;

(c) He acknowledges that the material facts so alleged are true, and

(d) He submits his consent because he knows that if charges were predicated upon the matters under investigation, or if the proceeding were prosecuted, he could not successfully defend himself.

15.2 Upon receipt of the required affidavit, the Board shall file it with this Court and this Court shall enter an order disbarring the attorney on consent.

15.3 The order disbarring the attorney on consent shall be a matter of public record. However, the affidavit required under the provisions of 15.1(a) above shall not be publicly disclosed or made available for use in any other proceeding except upon order of this Court.

## SECTION 16

### Discipline by Consent

16.1 An attorney against whom formal charges have been served may thereafter tender a conditional guilty plea to the petition or to a particular count thereof in exchange for a stated form of punishment. Such a tendered plea shall be submitted to Disciplinary Counsel and approved or rejected by the Board upon recommendation of the hearing committee if the matter has already been assigned for hearing, subject, however, to final approval or rejection by the Court if the stated form of punishment includes disbarment, suspension or public reprimand.

16.2 A continuance in a hearing committee proceeding on the basis of such a tender shall be granted only with the concurrence of Disciplinary Counsel. Approval of such a tendered plea by the Board, and if required, by the Court shall divest the hearing panel of further jurisdiction and no committee report need be prepared in such cases. The final order of discipline shall be predicated upon the petition and an approved tendered conditional guilty plea.

## SECTION 17

### Reciprocal Discipline

17.1 All attorneys subject to the provisions of this Rule shall, upon being subject-

ed to professional disciplinary action in another jurisdiction, promptly inform Disciplinary Counsel of such action. Upon being informed that an attorney subject to the provisions of these Rules has been subjected to discipline in another jurisdiction, Disciplinary Counsel shall obtain a certified copy of such disciplinary order and file the same with the Board and with this Court.

17.2 Upon receipt of a certified copy of an order demonstrating that an attorney admitted to practice in this State has been disciplined in another jurisdiction, this Court shall forthwith issue a notice directed to the attorney containing:

(a) A copy of said order from the other jurisdiction; and

(b) An order directing that the attorney inform the Court, within 30 days from service of the notice, of any claim by the attorney predicated upon the grounds set forth in section 17.4 hereof that the imposition of the identical discipline in this State would be unwarranted and the reasons therefor.

17.3 In the event the discipline imposed in the other jurisdiction has been stayed there, any reciprocal discipline imposed in this state shall be deferred until such stay expires.

17.4 Upon the expiration of 30 days from service of the notice issued pursuant to the provisions of 17.2 above, this Court shall impose the identical discipline unless Disciplinary Counsel or the attorney demonstrates, or this Court finds that upon the face of the record upon which the discipline is predicated it clearly appears:

(a) That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(b) That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or

(c) That the misconduct established warrants substantially different discipline in this State.

Where this Court determines that any of said elements exist, this Court shall enter such other order as it deems appropriate.

17.5 In all other respects, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State.

## SECTION 18

*Disbarred or Suspended Attorneys*

18.1 A disbarred or suspended attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of his disbarment or suspension and his consequent inability to act as an attorney after the effective date of his disbarment or suspension and shall advise said clients to seek legal advice of the client's own choice elsewhere.

18.2 A disbarred or suspended attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, each of his clients who is involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matters or proceedings, of his disbarment or suspension and consequent inability to act as an attorney after the effective date of his disbarment or suspension. The notice to be given to the client shall advise the client of the desirability of the prompt substitution of another attorney or attorneys of the client's own choice in his place.

In the event the client does not obtain substitute counsel before the effective date of the disbarment of suspension, it shall be the responsibility of the disbarred or suspended attorney to move in the court or agency in which the proceeding is pending for leave to withdraw.

The notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of the client of the disbarred or suspended attorney.

18.3 Orders imposing suspension or disbarment shall be effective on the date of entry in this Court. The disbarred or suspended attorney, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature.

18.4 Within ten days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with this Court an affidavit showing: (1) That he has fully complied with the provisions of the order and with these Rules; (2) all other state, federal and administrative jurisdictions to which he is admitted to practice; and (3) that he has served a copy of such affidavit upon Disciplinary Counsel. Such affidavit shall also set forth the residence or other address of the disbarred or suspended attorney where communications may thereafter be directed to him.

18.5 The Board shall cause a notice of the suspension or disbarment to be published in the legal journal and in a newspaper of general circulation in each county in which the disciplined attorney maintained an office for the practice of law.

18.6 The Board shall promptly transmit a certified copy of the order of suspension or disbarment to all judges in this State.

18.7 A disbarred or suspended attorney shall keep and maintain records of the various steps taken by him under these Rules so that, upon any subsequent proceeding instituted by or against him, proof of compliance with these Rules and with the disbarment or suspension order will be available. Proof of compliance with these Rules shall be a condition precedent to any petition for reinstatement.

## SECTION 19

*Reinstatement*

19.1 No attorney suspended for more than three months or disbarred may resume practice until reinstated by order of the Supreme Court, except as provided in Section 20.4.

19.2 A person who has been disbarred after hearing or by consent may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment.

19.3 Petitions for reinstatement by a disbarred or suspended attorney under this Rule shall be filed with the Board and served upon Disciplinary Counsel promptly. Upon receipt of the petition the Board shall promptly refer the petition to a hearing committee in the Disciplinary District in which the petitioner maintained an office at the time of his disbarment or suspension. The hearing committee shall schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this State and that his resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest. The hearing committee shall within 30 days file a report containing its findings and decisions and transmit same, together with the record, to the Board. Either party dissatisfied with the hearing committee's decision may obtain review thereof, as provided in Section 1.3 hereof.

19.4 If it is the decision of the hearing committee that petitioner be reinstated, the Board shall review the record, and within 60 days, either appeal as provided in Section 1.3 hereof or transmit to this Court the record of the proceedings before the hearing committee, together with its report approving same. This Court will take such action upon the record so transmitted as it

deems appropriate. No attorney will be reinstated except by order of this Court.

19.5 In all proceedings upon a petition for reinstatement, cross-examination of the respondent-attorney's witnesses and the submission of evidence, if any, in opposition to the petition shall be conducted by Disciplinary Counsel.

19.6 Petitions for reinstatement under this Rule shall be accompanied by an advance cost deposit in an amount to be set from time-to-time by the Board to cover anticipated costs of the reinstatement proceeding.

19.7 If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate him; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding, and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct which led to his suspension or disbarment; and the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment, in the discretion of the Supreme Court, which proof may include certification by the Bar Examiners of the successful completion of examination for admission to practice.

19.8 *Successive Petitions*—No petition for reinstatement under this Rule shall be filed within three years following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.

## SECTION 20

*Periodic Assessment of Attorneys*

20.1 Every attorney admitted to practice before this Court, except those exempt under 20.2, shall pay to the Clerk of this Court for the Grand Division wherein the attorney maintains an office on or before March 1, of each year an annual fee for each year beginning in 1976 to be set by the Court from time-to-time.

All funds collected hereunder shall be deposited in a depository designated by order of this Court, and withdrawals therefrom shall be made only upon resolution of the Board, by officers designated by the Board, for the purpose of defraying the costs of disciplinary administration and enforcement of these rules, and for such other related purposes as this Court shall from time-to-time authorize or direct.

The annual fee until further order of this Court shall be:

| After Date of Admission To Practice Law | Annual Fee |
| --- | --- |
| Up to five years: | $15.00 |
| Five years or more: | $25.00 |

20.2 There shall be exempted from the application of this rule:

(a) Attorneys who are non-residents of the state and no longer practice therein.

(b) Retired attorneys.

(c) Attorneys on temporary duty with the armed forces.

(d) Faculty members of Tennessee law schools who do not practice.

(e) Attorneys not engaged in the practice of law. The term, "the practice of law" shall be defined as any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy, in or out of court, rendered in respect to the rights, duties, regulations, liabilities or business relations of one requiring the services. It shall encompass all public and private positions in which the attorney may be called upon to examine the law or pass upon the legal effect of any act, document or law.

20.3 Any attorney who fails to timely pay the fee required under 20.1 above shall be summarily suspended, provided a notice of delinquency has been forwarded to him by certified mail, return receipt requested, addressed to his last known business address at least 30 days prior to such suspen-

sion, unless he shall have been excused on grounds of financial hardship pursuant to procedures to be established by the Board.

20.4 Any attorney suspended under the provisions of 20.3 above shall be reinstated without further order upon payment of all arrears and a penalty of 20% of the amount due from the date of his last payment to the date of his request for reinstatement.

20.5 To facilitate the collection of the annual fee provided for in 20.1 above, all persons required by this Rule to pay an annual fee shall, on or before March 1 of every year, commencing in 1976 file with the Clerk of this Court for the Grand Division wherein the attorney maintains an office a registration statement, on a form prescribed by this Court, setting forth his current residence and office addresses, and such other information as this Court may from time-to-time direct. In addition to such statement, every attorney shall file with the appropriate Clerk of this Court a supplemental statement of any change in the information previously submitted within 30 days of such change. All persons first becoming subject to these Rules by admission to the practice of law before the courts of this State after January 1, 1976, shall file the statement required by this Rule at the time of admission; but no annual fee shall be payable until March 1 next following such date of admission.

20.6 Within 30 days of the receipt of a statement or supplement thereto filed by an attorney in accordance with the provisions of 20.5 above, the appropriate Clerk of this Court shall acknowledge receipt thereof, on a form prescribed by this Court in order to enable the attorney on request to demonstrate compliance with the requirements of 20.1 and 20.5 above.

20.7 Any attorney who fails to file the statement or supplement thereto in accordance with the requirements of 20.5 above shall be summarily suspended; provided a notice of delinquency has been forwarded to him by certified mail, return receipt requested, addressed to his last known business address at least 30 days prior to such suspension. He shall remain suspended until he shall have complied therewith, whereupon he shall be reinstated without further order.

20.8 An attorney who has retired or is not engaged in practice shall advise the appropriate Clerk of this Court in writing that he desires to assume inactive status and discontinue the practice of law. Upon the filing of such notice, the attorney shall no longer be eligible to practice law.

20.9 Upon the filing of a notice to assume inactive status, an attorney shall be removed from the roll of those classified as active until and unless he requests and is granted reinstatement to the active rolls. Reinstatement shall be granted unless the attorney is subject to an outstanding order of suspension or disbarment or has been in inactive status for five years or more, upon the payment of any assessment in effect for the year the request is made and any arrears accumulated prior to transfer to inactive status. Attorneys who have been suspended or on inactive status for over five years before filing a petition for reinstatement to active status may be required, in the discretion of this Court, to establish proof of competency and learning in law which proof may include certification by the Bar Examiners of his successful completion of an examination for admission to practice subsequent to the date of suspension or transfer to inactive status.

20.10 The courts of this state are charged with the responsibility of insuring that no suspended attorney be permitted to file any document, paper or pleading or otherwise practice therein.

## DISABILITY

## SECTION 21

*Proceedings Where an Attorney is Declared to be Incompetent or is Alleged to be Incapacitated*

21.1 Where an attorney has been judicially declared incompetent or involuntarily

committed on the grounds of incompetency or disability, the Supreme Court, upon proper proof of the fact, shall enter an order transferring such attorney to disability inactive status effective immediately and for an indefinite period until the further order of this Court. A copy of such order shall be served upon such attorney, his guardian, and/or the director of the institution to which he has been committed in such manner as the Court may direct.

21.2 Whenever the Board shall petition this Court to determine whether an attorney is incapacitated from continuing the practice of law by reason of mental infirmity or illness or because of addiction to drugs or intoxicants, the Court may take or direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including the examination of the attorney by such qualified medical experts as the Court shall designate or assignment to a hearing committee for a formal hearing to determine the issue of capacity. If, upon due consideration of the matter, the Court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order transferring him to disability inactive status on the ground of such disability for an indefinite period and until the further order of this Court. Any pending disciplinary proceeding against the attorney shall be held in abeyance.

The Court shall provide for such notice to the respondent of proceedings in the matter as it deems proper and advisable and may appoint an attorney to represent the respondent if he is without adequate representation.

21.3 If, during the course of a disciplinary proceeding, the respondent contends that he is suffering from a disability by reason of mental or physical infirmity or illness, or because of addiction to drugs or intoxicants, which makes it impossible for the respondent to adequately defend himself, the Court thereupon shall enter an order immediately transferring the respondent to disability inactive status until a determination is made of the respondent's capacity to continue to practice law in a proceeding instituted in accordance with the provisions of 21.2 above.

If the Court shall determine that the respondent is not incapacitated from practicing law, it shall take such action as it deems proper and advisable including a direction for the resumption of the disciplinary proceeding against the respondent.

21.4 The Board shall cause a notice of transfer to disability inactive status to be published in the legal journal and in a newspaper of general circulation in each county in which the disabled attorney maintained an office for the practice of law.

21.5 The Board shall promptly transmit a certified copy of the order of transfer to disability inactive status to the judges of all of the courts in the counties in which the disabled attorney maintained his practice and shall request such action under the provision of Section 22 as may be indicated in order to protect the interests of the disabled attorney and his clients.

21.6 No attorney transferred to disability inactive status under the provisions of this Rule may resume active status until reinstated by order of this Court. Any attorney transferred to disability inactive status under the provisions of this Rule shall be entitled to petition for reinstatement to active status once a year or at such shorter intervals as this Court may direct in the order transferring the respondent to disability inactive status or any modification thereof. Such petition shall be granted by the Court upon a showing by clear and convincing evidence that the attorney's disability has been removed and he is fit to resume the practice of law. Upon such application, the Court may take or direct such action as it deems necessary or proper to a determination of whether the attorney's disability has been removed including

a direction for an examination of the attorney by such qualified medical experts as the Court shall designate. In its discretion, the Court may direct that the expense of such an examination shall be paid by the attorney, and that the attorney establish proof of competence and learning in law, which proof may include certification by the Bar Examiners of his successful completion of an examination for admission to practice.

21.7 Where an attorney has been transferred to disability inactive status by an order in accordance with the provisions of 21.1 above and, thereafter, in proceedings duly taken, he has been judicially declared to be competent, this Court may dispense with further evidence that his disability has been removed and may direct his reinstatement to active status upon such terms as are deemed proper and advisable.

21.8 In a proceeding seeking a transfer to disability inactive status under this Section, the burden of proof shall rest with the Board. In a proceeding seeking an order of reinstatement to active status under this Section, the burden of proof shall rest with the attorney.

21.9 The filing of a petition for reinstatement to active status by an attorney transferred to disability inactive status because of disability shall be deemed to constitute a waiver of any doctor-patient privilege with respect to any treatment of the attorney during the period of his disability. The attorney shall be required to disclose the name of every psychiatrist, psychologist, physician and hospital or other institution by whom or in which the attorney has been examined or treated since his transfer to disability inactive status, and he shall furnish to this Court written consent to each to divulge such information and records as requested by court appointed medical experts.

## SECTION 22

*Appointment of Counsel to Protect Clients' Interests When an Attorney is Transferred to Disability Inactive Status Because of Incapacity or Disability, or He Disappears or Dies, or is Suspended or Disbarred*

22.1 Whenever an attorney has been transferred to disability inactive status because of incapacity or disability, or he has disappeared or died, or has been suspended or disbarred and there is evidence that he has not complied with Section 18, and no partner, executor or other responsible party capable of conducting the attorney's affairs is known to exist, the senior judge in the judicial circuit, in which the attorney maintained his practice upon proper proof of the fact, shall appoint an attorney or attorneys to inventory the files of the inactive, disappeared, deceased, suspended or disbarred attorney and to take such action as seems indicated to protect the interests of the attorney and his clients.

22.2 Any attorney so appointed shall not be permitted to disclose any information contained in any files so inventoried without the consent of the client to whom such file relates, except as necessary to carry out the order of the court which appointed the attorney to make such inventory.

## SECTION 23

*Additional Rules of Procedure*

23.1 The record of a hearing shall be made available to the respondent at respondent's expense on request made to Disciplinary Counsel.

23.2 Except as is otherwise provided in these rules, time is directory and not jurisdictional. Time limitations are administrative, not jurisdictional. Failure to observe such directory time intervals may result in contempt of the agency having jurisdiction

but will not justify abatement of any disciplinary investigation or proceeding.

23.3 Except as otherwise provided in these Rules, the Tennessee Rules of Civil Procedure apply in disciplinary cases.

## MISCELLANEOUS PROVISIONS

### SECTION 24

*Expenses*

The salaries of Disciplinary Counsel and staff, their expenses, administrative costs, and the expenses of the members of the Board and of hearing committees shall be paid by the Board out of the funds collected under the provisions of Section 20. The Board shall annually obtain an independent audit by a certified public accountant of the funds entrusted to it and their disposition and shall file a copy of such audit with this Court.

### SECTION 25

*Confidentiality*

All proceedings involving allegations of misconduct by or the disability of an attorney shall be kept confidential until and unless a recommendation for the imposition of public discipline is filed with the Supreme Court by the Board, or the respondent-attorney requests that the matter be public, or the investigation is predicated upon a conviction of the respondent-attorney for a crime or, in matters involving alleged disability, this Court enters an order transferring the respondent-attorney to disability inactive status pursuant to Section 21, provided that, where review is sought pursuant to Section 1.3 the records and hearing in the circuit or chancery court and this Court of a disciplinary case shall be public to the same extent as other cases. All participants in the proceeding shall conduct themselves so as to maintain the confidentiality of the proceeding. This provision shall not be construed to deny access to relevant information to authorized agencies investigating the qualifications of judicial candidates, or to other jurisdictions investigating qualifications for admission to practice; or to law enforcement agencies investigating qualifications for government employment. In addition, the Board shall transmit notice of all public discipline imposed by the Supreme Court on an attorney or the transfer to inactive status due to disability of an attorney to the National Discipline Data Bank maintained by the American Bar Association.

## EFFECTIVE DATE

The provisions of this Rule insofar as that relate to the establishment and organization of the new disciplinary system and the registration and assessment of attorneys shall take effect January 1, 1976.

The clerks of this Court shall take immediate steps to implement the registration and assessment of attorneys.

The Board shall take immediate steps to establish the office of Disciplinary Counsel and staff.

The transfer of pending disciplinary investigations shall be accomplished in an orderly manner after the establishment of the office of Disciplinary Counsel and in accord with subsequent orders of this Court.

All suits now pending involving the discipline of attorneys and any suit that may be instituted prior to the establishment of the office of Disciplinary Counsel and the designation by this Court of the effective date of this rule, for all purposes, shall proceed under the provisions of existing law and Rule 42 prior to this amendment.

(s) Wm. H. D. Fones

(s) R. E. Cooper

(s) Joseph W. Henry

(s) Ray L. Brock, Jr.

(s) William J. Harbison