Petition for RULE OF COURT ACTIVATING, INTEGRATING
AND UNIFYING THE STATE BAR OF TENNESSEE.

*(Nashville,* December Term, 1954.)

Opinion filed October 7, 1955.

ALFRED T. ADAMS, SR., W. RAYMOND DENNEY, JOHN J. HOOKER and THOMAS WARDLAW STEELE, of Nashville; WALTER P. ARMSTRONG, JR., WALTER CHANDLER and W. EDWARD QUICK, of Memphis; JOHN H. DOUGHTY and CLYDE W. KEY, of Knoxville; AUBREY F. FOLTS and JOHN C. GOINS, of Chattanooga; MAYNE W. MILLER, of Johnson City; W. M. LEECH, of Charlotte; J. MALCOLM SHULL, of Elizabethton; and ALLEN J. STRAWBRIDGE, of Dresden, for petition.

FORREST ANDREWS, JOHN JENNINGS, JR. and WILBUR W. PIPER, of Knoxville; GEORGE H. ARMISTEAD, JR., F. A. BERRY, CHARLES L. CORNELIUS, MACLIN P. DAVIS, JR., D. L. LANSDEN, W. E. NORVELL, JR., JAY G. STEPHENSON, ALBERT W. STOCKELL and E. J. WALSH, of Nashville; STEVEN C. STONE, of Chattanooga; SAMUEL O. BATES, LEO BEARMAN and JOHN S. MONTEDONICO, of Memphis; I. D. BEASLEY, of Carthage; FRANK N. BRATTON, of Athens; J.H. CUMMINGS, of Woodbury; JAMES H. EPPS, JR., of Johnson City; WALTER M. HAYNES, of Winchester; and WM. C. TIPTON, of Covington, opposed.

Mr. Justice Tomlinson delivered the opinion of the Court.

The Bar Association of Tennessee, an unincorporated voluntary association of Tennessee lawyers, has petitioned this Court to adopt a rule integrating the Bar of Tennessee; that is, to order a State-Organized Bar to which every lawyer of the State must belong in order to practice law in this State. Proponents and opponents of the proposed rule orally argued the question on a day previously fixed. Briefs on each side have likewise been submitted.

Generally speaking, such a Bar has for its purpose the forwarding of the administration of justice and the prevention of the practice of law by unlicensed persons. One Court, Florida, *Petition of Florida State Bar Ass'n, Fla.*, 40 So. (2d) 902, 904, has defined such integration as ''the process by which every member of the bar is given an opportunity to do his part in performing the public service expected of him, and by which each member is

obliged to bear his portion of the responsibility." It is said by that Court that no State which has adopted such a rule has abandoned it thereafter. The fact that 27 States have so integrated their bars is, within itself, a strong and disinterested recommendation that such a Bar has much about it that is desirable.

But, in accordance with the truth that the acquiring of something of value requires the payment of a valuable consideration, such integration necessarily would require the yielding of some of the privileges enjoyed by the voluntary association. The reason for this is readily realized by the fact, in the language of the introductory text of 114 A. L. R. 161, that "integrated bars have the common characteristics of being organized by the state or under the direction of the state, and of being under its direct control, and in effect they are governmental bodies."

The Wisconsin Court considered such government organization to be quite a price to pay. It called attention to the fact that a necessary incident thereof is a requirement that dues in amounts fixed by the Court must be paid by every lawyer in the state, and, the integration being a governmental organization, the Court, or some other state authority, would have to exercise some degree of control over the expenditure, etc. of such funds. The Wisconsin Court then said:

"The bar as integrated would be definitely subordinate to the court and under the disagreeable necessity of having its activities policed by the court and this being true, the price of integration would be much greater than this court or any lawyer ought to be willing to pay, unless the exigencies in respect to standards of admission and discipline are so great as to warrant adoption of some such expedient, either

temporarily or upon a limited scale." *In re Integration of Bar,* 249 Wis. 523, 25 N. W. (2d) 500, 502.

We have no definite opinion as to the extent of the accuracy of the aforestated conclusion of the Wisconsin Court, but we call attention to it in passing for whatever it may be worth.

Of the 27 states which have integrated bars, 4 have been put into effect by order of Court only. The rest of these States have taken such action pursuant to approval and purported authority of the legislative bodies of 23 States.

This Court is faced at present with an entirely contrary situation. The General Assembly of our State did last February, and in unmistakable terms, place its stamp of disapproval upon the idea of state integration of our Bar. Its Chapter 54 of the Public Acts of 1955 purports to forbid such integration. Its language is:

"That no person shall be granted or denied the license or right to practice law in Tennessee because he or she is or is not a member of any lawful Club, Association or Guild."

The time element considered, we are under the necessity of believing that this statute was enacted in anticipation, and for the purpose, of defeating proponents' petition to state-integrate our Bar.

It is said by petitioners here that Chapter 54 is unconstitutional in that it is a trespass by the Legislature into a field constitutionally reserved exclusively for the judiciary. Respondents, on the other hand, insist that the Legislature is vested with the authority to fix the qualifications and conditions under which an individual may practice law in Tennessee. They further say that this statute must be presumed valid until it is otherwise adjudged, and that this Court has no jurisdiction to adjudi-

cate that question in these proceedings because the jurisdiction of this Court is solely appellate.

If Courts have inherent power to prescribe qualifications required for the practice of law, it seems to follow, as held by the Supreme Court of Massachusetts, in *Collins* v. *Godfrey*, 324 Mass. 574, 87 N. E. (2d) 838, 841, that "the Supreme Judicial Court, as under the Constitution the highest court in the Commonwealth, is the proper representative of the judicial department and the repository of the power." This Court's power, then, in this respect is original, rather than appellate. That being true, its adjudication as to whether Chapter 54 deprives it of this original authority is only an incident to its decision as to whether it will exercise such authority.

The inherent right of Courts to prescribe qualifications necessary for the practice of law does not mean that the Legislature is without authority in that field. The property, rights, liberties and lives of people are continuously entrusted to lawyers. So, the State is vitally interested in the qualifications and integrity of those into whose hands such vital trusts are continuously placed. Thus, a legislative requirement that individuals who would practice this profession must first meet certain reasonable conditions and qualifications is only the exercise by the Legislature of the police power with which that department of our government is vested. *Lamb* v. *Whitaker*, 171 Tenn. 485, 490, 105 S. W. (2d) 105.

But the exercise of such authority by the Legislature does not mean that this Court, in the exercise of its authority within the premises, may not require qualifications more extensive than those exacted by the Legislature. Read: *Integration of Bar Case*, 244 Wis. 8, 11 N. W. (2d) 604, 12 N. W. (2d) 699, 151 A. L. R. 586-608, and cases there cited.

In considering, then, whether a legislative enactment with reference to the right to practice law in this State is an exercise by the Legislature of its police power, it may be necessary to keep in mind that it is one thing for a statute to say that individuals must have certain qualifications in order to practice, but an entirely different thing for the statute to say that individuals need not have certain qualifications in order to practice.

Many distinguished lawyers of this State from time to time over a long period of years have earnestly sought to procure an integrated bar either by legislative enactment or court rule. Many of our distinguished lawyers have just as earnestly sought to defeat these efforts. Each, no doubt, has been animated by that which he or she thought to be for the best interest of the public, the courts, and the profession. There is no need to detail the facts as they have existed from time to time during that long period further than to recite the conditions pertinent to the decision on this petition, as those conditions exist at this time.

One of those conditions, to wit, the enactment (as distinguished from its validity) of Chapter 54 of the Public Acts of 1955 has heretofore been mentioned. Another is with reference to the present attitude of the lawyers of the State as revealed by the record before us.

At the present time there are approximately 3,600 persons licensed to practice law in Tennessee. Twenty-two hundred of these (61% plus) are members of the unincorporated Bar Association of Tennessee. Fourteen hundred (39% minus) are not members of that Association. When it, the Bar Association of Tennessee, initiated the proceedings which have resulted in the present petition it sent to each of its 2,200 members a ballot whereon such member was requested to vote secretly either for or

against the proposed integration. Such ballots were not sent to those 1,400 lawyers, who are not members of that association.

By seeking to ascertain the non-coerced wishes of its 2,200 members the Bar Association very properly recognized that the views and wishes of these lawyers is an important factor in determining whether an integrated bar should be ordered. The integration of the Bar is of as much concern to those 1,400 lawyers who are not members of the Association as it is to the 2,200 who are members. In our opinion, therefore, the Association made a material mistake in not affording to these 1,400 the same opportunity to express their wishes as was afforded to the 2,200 members of the Association.

The very fact that these 1,400 lawyers have not elected to become members of the well functioning and capable unincorporated Bar Association is quite strong evidence that at least a large majority of them is opposed to a rule forcing membership therein. There is no evidence to the contrary.

Of the 2,200 members of the Association to whom ballots were sent, 557 did not return the ballot. This necessarily means that these 557 were either (1) in doubt as to the wisdom of forcing membership, or (2) indifferent about it. In either of these events, it is accurate to say that the petition to integrate does not have the support of these 557 lawyers.

Of the 1,643 members of the Association who did return the ballots 836 voted in favor of State Integration, and 807 voted against it. This means that approximately 23% of the lawyers of this State have expressed a desire for integration, and about an equal percent have affirmatively rejected the idea.

Thus it is that in consideration of this petition this

Court is faced with the established fact that at this time only 23% of the lawyers of the State have expressed themselves as being in favor of State Integration. The most probable conclusion from the evidence is that the remaining 77% are either postively against it, or in doubt as to its wisdom, or entirely indifferent about it. The question thus posed is whether under these circumstances the public interest will be served by this Court forcing membership in this organization.

When a petition to integrate its Bar was before the Minnesota Court, in denying the petition, the Court said

that the desired "beneficial results" which might be derived through an integrated bar could be attained only if it "receives the wholehearted support of a decided majority of the members of the bar." *Petition for Integration of Bar of Minn.*, 216 Minn. 195, 12 N. W. (2d) 515, 519.

The Massachusetts Court, in denying a petition to integrate by a rule of Court, said this:

"* * * since it does not appear that members of the bar of Massachusetts generally are in favor of action by the court to establish an integrated bar, it is not at present advisable for the court by rule or order to establish an integrated bar so called in which every attorney in the Commonwealth must be a member in order to practice law, and that the establishment at present of such an integrated bar would not be in the interest of the public and the administration of justice. * * *" *In re Integrated Bar,* 321 Mass. 747, 74 N. E. (2d) 140, 141.

In the case of the Wisconsin Supreme Court, a legislative Act directed the Court to integrate the Bar. That Court, however, postponed the matter because a large number of lawyers of the State had not been afforded an

opportunity to express their views thereon. 244 Wis. 8, 11 N. W. (2d) 624, 151 A. L. R. 615. Thereafter that Court denied the petition in 25 N. W. (2d) 500, 503, with the statement, among others, that:

"We regret that a nearly complete support of the existing bar associations by members of the bar has not been achieved, and advocate its complete and whole-hearted support by the individual members of the bar."

The Montana Supreme Court took similar action, one reason assigned being that: "The lawyers of the state have not spoken in impressive enough numbers to convince us that the time is at hand when such measures are justified." *In re Unification of Montana Bar Ass'n,* 107 Mont. 559, 87 P. (2d) 172, 173.

Of the 4 States in which integration is said to have been put into effect by rule of Court an entirely different situation from that with which we are faced is found to exist in at least three of those States in that Nebraska, *In re Integration of Nebraska Bar Ass'n,* 133 Neb. 283, 275 N. W. 265, 114 A. L. R. 151, and Florida, *Petition of Florida State Bar Ass'n, Fla.,* 40 So. (2d) 902, the question was submitted by secret ballot to all the lawyers in each State and the returns in each were quite strongly in favor of the proposed rule. The Oklahoma Court, *In re Integration of State Bar of Oklahoma,* 185 Okl. 174, 95 P. (2d) 113 seems to have had the approval of some kind of a State Bar Act. 151 A. L. R. 617.

The other situation to which this Court is compelled to give serious thought, in acting upon this petition, is that the General Assembly of this State did by a very large majority in each house during the present year enact the heretofore referred to statute purporting to forbid the State Integration of our Bar. Assuming, but not de-

ciding, the invalidity of that statute, is it in the public interest for this Court to act contrary to the wish of this coordinate branch of the government, as expressed by the enactment of that statute?

Requiring qualifications for the practice of law is, as we have seen, a field in which both the legislative and judicial departments of our State may enter. The extent to which the Legislature may go in such field seems to depend upon whether a particular statute enacted by it in this field is a reasonable exercise of the police power of the State. The judicial department, in the exercise of its inherent authority, may require more of the officers of its Courts.

Throughout the history of this State, the judicial department and the legislative department have not come in conflict upon this question except perhaps in the Lawyers Tax Cases reported in 55 Tenn. 565. It is well that such is the case because, as observed by the Court of Wisconsin in its *Integration of Bar Case,* 244 Wis. 8, 11 N. W. (2d) 604, 622, 151 A. L. R. 586, 612-613, "The state suffers essentially by every such assault of one branch of the government upon another; and it is the duty of all the coordinate branches scrupulously to avoid even all seeming of such."

▪ The public welfare demands cooperation between the legislative and judicial branches of our Government, and an avoidance of unnecessary controversies between them. Thus the wishes of the legislative branch is entitled to much consideration in acting upon this petition.

This Court is faced with a different situation from that faced in any one of the 27 States which have put integration into effect. To recapitulate, only a small minority of the lawyers of this State seem to support the idea of being forced to become a member of a State Bar Associa-

tion. Our Legislature, which has a great interest in this field, and speaks for the general public, has likewise expressed by a very large majority vote its opposition. There are no necessities, in so far as is made to appear, which require such a material innovation governing the right to practice law in this State. No State Supreme Court, in so far as this Court can find, has required integration of the bar in the face of these facts. On the other hand, several, though faced with facts considerably more favorable to the proposal than those which this Court must consider, have rejected such proposal as being contrary to the public welfare.

So, too, this Court is of the opinion that under the circumstances stated, it would be against the public interest to adopt a rule forcing State bar integration of Tennessee lawyers. Hence, the petition must be denied, but without prejudice, of course.