William P. NEWTON, Plaintiff–
Appellant,

Attorney General, State of Tennessee,
Intervenor–Appellee,

v.

James S. COX, Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

May 9, 1994.

James F. Schaeffer, Jr., Memphis, for appellant.

Robert L. Green, Memphis, for defendant-appellee.

Charles W. Burson, Atty. Gen. and Reporter, Sue A. Sheldon, Asst. Atty. Gen., Nashville, for intervenor-appellee.

## OPINION

ANDERSON, Justice.

We granted this application to determine whether the Medical Malpractice Claims Act, which regulates contingent attorney fee contracts, establishes a cause of action for its violation.[1] A second question is whether the Act violates the United States or Tennessee Constitutions. The Court of Appeals held that the statute is directed to the judiciary and, therefore, no cause of action is available against an attorney for its violation. As a result, they did not reach the constitutional issues. We have determined that the statute does establish a cause of action for its violation. Accordingly, the attorney fee contract in this case is voidable because it violates the public policy enunciated by the statute. We also conclude that the statute does not violate the United States or Tennessee Constitutions.

### FACTUAL BACKGROUND

In February 1984, plaintiff William P. Newton underwent an angioplasty procedure in Baptist Hospital in Memphis, Tennessee. During the procedure, he suffered an air embolism of the brain which caused him to become comatose. Newton was rushed to Duke University Hospital by air ambulance for treatment in a hyperbaric chamber to dissolve the air in the brain. Thereafter, he was transported to Emory University in Atlanta for rehabilitation. While at Emory, William P. Newton and his wife, Shirley Newton, employed the defendant attorney, James S. Cox, to represent them in a medical negligence case, which they alleged arose out of the angioplasty procedure. On March 25, 1984, Newton and his wife signed a contingency fee contract with Cox which provided that:

[i]t is agreed to pay the law firm of James S. Cox and Associates a sum equal to the following: Fifty (50%) percent of the gross proceeds of recovery by compromise be-

1. Tenn.Code Ann. § 29–26–120.

fore litigation; or fifty (50%) percent after litigation is instituted and filed.

Cox did not advise Newton or his wife of the existence of Tenn.Code Ann. § 29–26–120, which provides as follows:

Compensation for reasonable attorneys' fees in the event an employment contract exists between the claimant and his attorney on a contingent fee arrangement shall be awarded to the claimant's attorney in a malpractice action in an amount to be determined by the court on the basis of time and effort devoted to the litigation by the claimant's attorney, complexity of the *claim* and other pertinent matters in connection therewith, not to exceed thirty-three and one-third (33⅓%) percent of all damages awarded to the claimant. (Emphasis added).

In June 1984, Cox filed a medical malpractice complaint on behalf of Newton against Baptist Hospital and Dr. Samaha, who performed the angioplasty procedure, alleging medical negligence which resulted in Newton's injuries and damages. In June 1985, the medical malpractice claim was settled for $225,000. In accordance with the fee contract, Cox received an attorney fee of 50 percent of the gross proceeds of the settlement, or $112,500.

Shortly after the settlement, Newton and his wife began divorce proceedings. During the pendency of the divorce action, Newton first discovered the existence of Tenn.Code Ann. § 29–26–120. As a result, Newton filed suit against Cox seeking to recover $37,500 plus interest, the difference between the 50 percent attorney fee ($112,500) provided for in the contract and the 33⅓ percent maximum attorney fee ($75,000) set out in the statute.

Cox admitted that the attorney fee charged was in excess of the 33⅓ percent set out in the statute, but asserted that the statute was unconstitutional. After a bench trial, the trial court ruled that the statute was unconstitutional because it violated the defendant's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution and Article I, § 8 and Article XI, § 8 of the Tennessee Constitution, and because it violated the separation of powers provisions of Article II, §§ 1 and 2, and Article VI, § 1 of the Tennessee Constitution.

The Court of Appeals did not reach the constitutional issues because it held that the statute "directs its mandate to the trial court as to what the court should do in setting a reasonable fee, rather than to the attorney." Accordingly, the Court of Appeals held that the plaintiff had no cause of action against the defendant pursuant to this statute. We granted the application to determine the important questions raised in this appeal.

### APPLICABILITY OF TENN.CODE ANN. § 29–26–120

■ The plaintiff Newton argues that as a member of the public, he is clearly within the class of persons intended to be the beneficiary of Tenn.Code Ann. § 29–26–120, and that a cause of action exists for the statute's violation. Moreover, according to Newton, the statute which limits attorneys' contingency fees in medical malpractice claims was intended by the Legislature to increase the damages injured citizens received as a result of medical malpractice.

On the other hand, the defendant Cox argues that a fair and reasonable construction of the statute is that it does not place any limitation upon the percentage of recovery that an attorney may contract for in a contingent fee contract in a medical malpractice action. Rather, it imposes a duty on the trial courts only to determine a reasonable attorney fee in cases where there is a contingent fee contract in a medical malpractice action. As a result, there is no cause of action against an attorney who violates the statute.

The Medical Malpractice Review Board and Claims Act was enacted in 1975 by the Legislature to contain the cost of medical malpractice litigation because of the perceived medical malpractice insurance crisis that existed at that time. *See Harrison v. Schrader*, 569 S.W.2d 822, 826 (Tenn.1978). The Act contained a number of restrictive measures, including a statute of repose, limitations on expert testimony, a collateral source rule, and the limitation on attorneys' fees. As we noted in *Harrison*, the Legisla-

ture saw the Act as a means of controlling the cost of health care and benefiting the general welfare of the State's citizens.[2]

At the time of its enactment in 1975, Tenn.Code Ann. § 29–26–120 provided that attorneys fees were to be awarded to the claimant's attorney in a malpractice action on the basis of the complexity of the "case." The following year, the statute was amended by deleting the word "case" and substituting the word "claim." A narrow application of the word "case" could describe litigation only, while a broader construction could encompass a cause of action from its inception. "Claim," however, is clearly a broader term encompassing a cause before litigation is filed, as well as after. The guiding principle of statutory construction is to give effect to the legislative intent. *Long v. Stateline Sys., Inc.,* 738 S.W.2d 622, 623 (Tenn.1985). Considering the plain language of the statute without any forced or subtle construction which would extend or limit its meaning, and the amendment to the statute inserting a more comprehensive term, we conclude that the Legislature intended for the statute to apply to all malpractice claims, including settlements before and after litigation is filed. *See State, ex rel. Metropolitan Gov't of Nashville and Davidson County v. Spicewood Creek Watershed Dist.,* 848 S.W.2d 60, 62 (Tenn.1993). It is clear that the Legislature, through the enactment of this statute, has established that the policy of this state shall be that attorneys in medical malpractice cases entering into contingent fee contracts are to receive no more than 33⅓ percent of the gross recovery of a malpractice claimant as an attorney fee. Tenn.Code Ann. § 29–26–120, therefore, applies to the present case as an enunciation of the public policy of this state.

Having concluded that the statute here under consideration represents a declaration of the public policy of this State, we must next determine whether a contract in contravention of that statute is "void" or "voidable." It is widely recognized that

[a] void contract is no contract at all; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach. No disaffirmance is required to avoid it, and it cannot be validated by ratification. . . . A contract wholly void is void as to everybody whose rights would be affected by it if valid.

17A Am.Jur.2d *Contracts* § 7 (1991) (footnotes omitted).

In contrast,

a voidable contract is one where one or more parties have the power . . . to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance. Accordingly, a voidable contract is valid and binding until it is avoided by the party entitled to avoid it.

*Id.*

The prevailing view which has also been applied in Tennessee is that contracts are voidable and not void when they violate statutes enacted for the protection of the public interests or for the protection of the class of persons of which the party seeking to avoid the contract is a member. *Herbert v. W.G. Bush & Co.,* 42 Tenn.App. 1, 298 S.W.2d 747, 752 (1956); *Palmer Bros. v. Havens,* 29 Tenn.App. 8, 193 S.W.2d 91, 92 (1945); *see generally* 17A Am.Jur.2d *Contracts* § 251 (1991).

The contract at issue here violates a statute that was enacted both for the protection of the public and for the protection of medical malpractice claimants, a class of persons of which plaintiff is a member. Accordingly, the plaintiff's cause of action to avoid the contingent fee contract to the extent that it contravenes the statute is cognizable and proper. *See Herbert v. W.G. Bush & Co., supra* (if a contract is against the public policy, a court will enter a decree to protect the public interests); *Palmer Bros. v. Havens, supra* (where a contract is violative of

---

**2.** The cause of the medical malpractice insurance crisis of the 1970s; its reoccurrence in the 1980s; and the legislative solutions adopted have been the subject of controversy and debate. *See* Sanders and Joyce, *"Off to the Races:" The* *1980s Tort Crisis and the Law Reform Process,* 27 Hous.L.Rev. 207 (1990). For our purposes, the only question is whether the Legislature could reasonably conceive of a relationship between the statute and its purpose.

public policy, a court may set aside an executed contract and order repayment of money paid on the contract).

## CONSTITUTIONALITY OF TENN.CODE ANN. § 29–26–120

### Equal Protection

■ The defendant contends that Tenn. Code Ann. § 29–26–120 violates the equal protection provisions of the Fourteenth Amendment to the United States Constitution and the equal protection provisions of the Tennessee Constitution, Article 1, § 8 and Article 11, § 8. While recognizing that "[t]he equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment are historically and linguistically distinct," this Court has followed the framework developed by the United States Supreme Court for analyzing equal protection claims. *Tennessee Small School Systems v. McWherter,* 851 S.W.2d 139, 152–54 (Tenn. 1993). In that case, we stated:

> [The Supreme Court] has utilized three standards of scrutiny, depending upon the right asserted. *See City of Memphis v. International Brotherhood of Elec. Workers Union,* 545 S.W.2d 98, 101 (Tenn.1976), (reduced scrutiny); *Mitchell v. Mitchell,* 594 S.W.2d 699, 701 (Tenn.1980) (heightened scrutiny); *Doe v. Norris,* 751 S.W.2d [834,] at 840 [Tenn.1988] (strict scrutiny).

*Tennessee Small School Systems v. McWherter, supra,* 851 S.W.2d at 153.

> The concept of equal protection espoused by the federal and of our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920); *see Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *State ex rel Dept. of Social Services v. Wright,* 736 S.W.2d 84 (Tenn.1987). Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. *Plyler v. Doe, supra,* 457 U.S. at 216, 102 S.Ct. at 2394. "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. *Id.* In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest. *Id.; see State v. Southern Fitness and Health, Inc.,* 743 S.W.2d 160, 164 (Tenn.1987); *Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn.1978).

*Tennessee Small School Systems v. McWherter, supra,* 851 S.W.2d at 153 *citing Doe v. Norris, supra,* 751 S.W.2d at 840.

Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" or operates to the peculiar disadvantage of a "suspect class." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973).

We have previously held that medical malpractice litigants are not members of a suspect class. *Sutphin v. Platt,* 720 S.W.2d 455 (Tenn.1986). Moreover, notwithstanding defendant's assertion, it is obvious that attorneys affected by Tenn.Code Ann. § 29–26–120 are not those who have been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process," and thus be denominated a "suspect class." *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 28, 93 S.Ct. at 1294.

■ Furthermore, while the ability to enter into contracts is a "right," it is not a fundamental right which would trigger strict scrutiny analysis. *See e.g., Broadwell v. Holmes,* 871 S.W.2d 471 (Tenn.1994) (parental right to govern the rearing of a child); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to procreate).

This Court has consistently held that the rational basis test is the appropriate analysis to be employed when determining the consti-

tutionality of medical malpractice statutes. *See Sutphin v. Platt, supra,* 720 S.W.2d at 457 (contiguous state limitation upon medical experts in medical malpractice cases); *Harrison v. Schrader, supra,* 569 S.W.2d at 825 (medical malpractice statute of repose).

█ Under the rational basis standard, "[i]f some reasonable basis can be found for the classification [as set out in the statute], or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Tennessee Small School Systems v. McWherter, supra,* 851 S.W.2d at 153.

Most courts in other jurisdictions which have considered this issue and have applied this analysis to medical malpractice contingency fee statutes have upheld the statutes on equal protection grounds. *See, e.g., Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E.2d 585, 602–603 (1980) ("The disparate treatment accorded plaintiffs and counsel in medical malpractice cases is the natural consequent of the fact that the Legislature sought in this act to protect the public interest adversely being affected by a curtailment of malpractice insurance for health care providers."); *DiFilippo v. Beck,* 520 F.Supp. 1009, 1016 (D.Del.1981) ("Similarly, it is rational to limit attorneys' fees which may be collected in malpractice suits and not in other actions because the limitation is also related to reducing malpractice insurance costs and, consequently, medical costs."); *Roa v. Lodi Medical Group, Inc.,* 37 Cal.3d 920, 211 Cal. Rptr. 77, 83, 695 P.2d 164, 170 (1985) *cert. dismissed,* 474 U.S. 990, 106 S.Ct. 421, 88 L.Ed.2d 352 (1985) ("[T]he legislature could reasonably have determined that the provision would serve to reduce malpractice insurance costs.")

We recognize that the New Hampshire Supreme Court found that a similar statute was unconstitutional, on the basis that there was no direct evidence in that case showing the relationship between the statutory classifications and the purposes of the legislation. *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 838–39 (1980).

However, under the rational basis test, it is not necessary that there be specific evidence presented to show the relationship between

the statute and the purpose of the Medical Malpractice Act. The proper analysis is whether the legislature could conceive of a relationship between the statute and the purpose of the Act. It is conceivable that the General Assembly concluded that the contingency fee cap of Tenn.Code Ann. § 29–26–120 would further the purposes of the Medical Malpractice Act by reducing malpractice insurance costs and, therefore, reduce the cost of health care to the public. Applying this rational basis analysis, we hold that Tenn.Code Ann. § 29–26–120 does not violate the equal protection provisions of the Tennessee or United States constitutions.

### Due Process

█ The defendant argues that the trial court was correct in finding that Tenn.Code Ann. § 29–26–120 violates the due process provisions of the United States and Tennessee constitutions. Specifically, the defendant alleges that the statute violates due process because "it deprives private citizens of their unalienable right to contract," and "it deprives an attorney representing a client in a medical malpractice cause of action of the freedom of contract without a substantial relation to a legitimate government purpose."

█ This Court has previously held that the "law of the land" provision of Article I, § 8 of the Tennessee Constitution is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution. *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn.1980). Unless a fundamental right is involved, the test for determining whether a statute comports with substantive due process is whether the legislation bears "a reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934); *National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). The right to contract is not unalienable or absolute, but it is subject to curtailments, limitations, or destruction by the legislature when done by proper classification. *Daugherty v. State,* 216 Tenn. 666,

393 S.W.2d 739 (1965) *cert. denied,* 384 U.S. 435, 86 S.Ct. 1601, 16 L.Ed.2d 671 (1966). Since the statute does not impinge upon a fundamental right, it does not violate the defendant's due process rights under either the state or federal constitutions because it is not arbitrary nor discriminatory, and bears a reasonable relation to a proper legislative purpose, the General Assembly's desire to ameliorate the medical malpractice crisis.

### Separation of Powers

■ Finally, the defendant contends that the trial court properly held that Tenn.Code Ann. § 29–26–120 violates the "separation of powers" provisions of the Tennessee Constitution. Article II, §§ 1 and 2 of the Tennessee Constitution provide that the powers of the government are divided into the legislative, executive and judicial branches. None of the three branches may exercise any of the powers properly vested in either of the others. Article VI, § 1 vests the judicial power of this state in the Supreme Court and inferior courts.

The authority of this Court to make rules governing the practice of law is derived from this judicial power. *Barger v. Brock,* 535 S.W.2d 337 (Tenn.1976). We have implemented this authority by adopting a set of rules governing the practice of law, including Rule 8 which establishes the Code of Professional Responsibility. Disciplinary Rule 2–106(A) provides that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Subsection (B) of Disciplinary Rule 2–106 provides a list of factors to be considered in determining the reasonableness of a fee.

It is defendant's contention that when the legislature enacted Tenn.Code Ann. § 29–26–120, it encroached upon the power of the judiciary to control the conduct of attorneys. Specifically, defendant argues that Tenn. Code Ann. § 29–26–120 is in direct conflict with Disciplinary Rule 2–106. We disagree.

This Court has previously recognized that areas exist in which both the legislative and judicial branch have interests, and that in such areas both branches may exercise appropriate authority. For example, in *Petition for Rule of Court Activating, Integrat-*

*ing, and Unifying the State Bar of Tennessee,* 199 Tenn. 78, 282 S.W.2d 782 (1955), this Court upheld the constitutionality of the statute which prohibited any individual being denied admission to the bar on the basis of his or her not belonging to any club, association, or guild. We stated:

> The inherent right of Courts to prescribe qualifications necessary for the practice of law does not mean that the Legislature is without authority in that field. . . . Thus, a legislative requirement that individuals who would practice this profession must first meet certain reasonable conditions and qualifications is only the exercise by the Legislature of the police power with which that department of our government is vested.

*Id.,* 282 S.W.2d at 784.

On the other hand, in situations where the legislative enactment is in direct conflict with and totally abrogates the Court's authority with regard to the practice of law, the statute is unconstitutional. For example, in *Cantor v. Brading,* 494 S.W.2d 139 (Tenn.App.1973), the Court of Criminal Appeals struck down a statute which allowed attorneys who had been permanently disbarred to seek re-admission after a specified period of time. The intermediate appellate court determined that the statute directly contravened the operation of the Court's authority in admitting and supervising attorneys. *Id.,* at 143.

Just a year later, in *Belmont v. Board of Law Examiners,* 511 S.W.2d 461 (Tenn. 1974), this Court struck down a statute which provided that no licensing agency for any profession could adopt or enforce a rule which limited the number of times that a person could apply for and take a licensing examination. The statute directly contravened a rule of this Court limiting the number of times an individual could take the bar examination. We found that the "act of the legislature [was not] in aid of the inherent power of the judiciary, . . . but one that conflicts with and supersedes the Court's declared requirements, and constitutes an attempted exercise of powers properly belonging to the judicial branch by the legislative branch. . . ." *Id.* at 464.

In this case, however, the statute is supplemental to and in aid of Disciplinary Rule 2-106(A). We, therefore, view the statute at issue here as an exercise of the legislature's police powers, intended to protect the public. Since the statute does not directly conflict with the Supreme Court's authority to regulate the practice of law, and because it is designed to declare the public policy with respect to attorney fee contracts, we hold that it does not unconstitutionally impinge upon the Supreme Court's authority to regulate the practice of law. Accordingly, Tenn. Code Ann. § 29–26–120 does not violate the Tennessee Constitution's "separation of powers" principle.

### CONCLUSION

In conclusion, we hold that Tenn.Code Ann. § 29–26–120 is a constitutional declaration of the public policy of this state with regard to contingency attorney fee contracts in medical malpractice cases. Since the contract entered into between plaintiff and defendant violates this statute and hence the public policy of this state, we find that it was voidable. Plaintiff's suit to avoid the contract should have been allowed. Accordingly, the Court of Appeals is reversed and the case is remanded to the trial court for proceedings consistent with this Opinion. Costs of the appeal are taxed against the defendant, James S. Cox.

REID, C.J., and DROWOTA and O'BRIEN, JJ., concur.

DAUGHTREY, J., not participating.