IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 10, 2024 Session

## BERKELEY RESEARCH GROUP, LLC v. SOUTHERN ADVANCED MATERIALS, LLC

**Appeal from the Chancery Court for Shelby County**
**No. CH-22-1433-II Jim Kyle, Chancellor**

_____

**No. W2023-00720-COA-R3-CV**

_____

Defendant appeals the trial court's decision to deny its motion to dismiss for lack of personal jurisdiction and grant the plaintiff's motion to confirm an arbitration award. Because we conclude that the plaintiff failed to establish that the trial court had either specific or general jurisdiction over this matter, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Philip B. Seaton, Memphis, Tennessee, for the appellant, Southern Advanced Materials, LLC.

David Mendelson and Adam M. Nahmias, Memphis, Tennessee, for the appellee, Berkeley Research Group, LLC.

OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about April 4, 2019, Plaintiff/Appellee Berkeley Research Group, LLC ("Plaintiff") and Defendant/Appellant Southern Advanced Materials, LLC ("Defendant") entered into an Engagement Agreement for Expert Consulting Services ("the Agreement"). The purpose of the Agreement was to engage Plaintiff and an expert employed thereby for expert consulting and support services in a New York litigation between Defendant and a

third-party. In addition to detailed terms governing the work to be performed and the parties' contractual obligations, the Agreement contained the following provision:

> This Agreement shall be interpreted and controlled by the laws of the state of Delaware. Any controversy, dispute, or claim between [Defendant] on the one hand and [Plaintiff] on the other hand of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement, including any claims based on contract, tort, or statute, ("Claims") shall be resolved at the request of any party to this agreement, by final and binding arbitration, administered by Judicial Arbitration & Mediation Services, Inc. (JAMS), . . . , and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof. Any such arbitration shall take place exclusively in Philadelphia, PA. . . .

In September and November 2019, Defendant paid at least three invoices arising from work performed under the Agreement out of an office and bank account located in Memphis, Tennessee. In July 2020, a dispute arose between the parties related to Defendant's alleged non-payment of additional invoices submitted under the Agreement.

Pursuant to the Agreement, the parties entered into binding arbitration as to the dispute. The arbitration occurred virtually on October 26–27, 2021. On August 2, 2022, the arbitrator issued a final ruling in favor of Plaintiff for a total award of $433,815.34.

On October 17, 2022, Plaintiff filed a petition in the Shelby County Chancery Court ("the trial court") to confirm the arbitration award and enroll the award as a judgment. The petition alleged that the trial court had personal and subject matter jurisdiction to confirm the arbitration award and render judgment in favor of Plaintiff pursuant to the award. The petition finally sought an award of attorney's fees.

On November 17, 2022, Defendant filed a motion to dismiss the petition to confirm the arbitration award, arguing that the trial court lacked both personal and subject matter jurisdiction, that venue was improper, and that the Agreement "reserves all rights to adjudicate jurisdiction and venue to the State of Delaware."

In support of its motion, Defendant filed a memorandum of law, a statement of undisputed facts,[1] the affidavit of William P. Wells, Defendant's Manager, and various exhibits. The argument in Defendant's memorandum was essentially two-fold. First, Defendant asserted that the Agreement mandated that the arbitration be confirmed and enrolled only in Delaware. Second, Defendant asserted that Tennessee lacked sufficient

---

[1] Plaintiff later objected to the statement of undisputed facts, as improperly filed in connection with a motion to dismiss.

contacts with Defendant so as to confer personal jurisdiction over Defendant in this matter.

As to the issue of minimum contacts, Mr. Wells stated in his affidavit that Defendant was a Delaware limited liability company ("LLC"); that Defendant's sole purpose was to invest in another company, CV Holdings, LLC ("CV Holdings"), a Delaware LLC with its principal place of business in Alabama; that neither Defendant nor CV Holdings conduct any business Tennessee; that Defendant "maintains an office in Memphis, Tennessee for administrative purposes only"; that the subject of the Agreement was a New York litigation that had no connection with Tennessee whatsoever, including the subject matter, the parties, or the attorneys; and that Plaintiff also had no contact with Tennessee, including during the performance of the Agreement or the arbitration. Defendant supported its filings with a print-out from the Delaware Division of Corporations indicating that Defendant was incorporated as an LLC in Delaware on July 24, 2001; the document stated, however, that it was "not a statement of good standing."

Plaintiff filed a response in opposition to the motion to dismiss on December 9, 2022. Therein, Plaintiff first asserted that the Agreement did not mandate that the arbitration be confirmed in Delaware alone, but any state with jurisdiction. Plaintiff further argued that personal jurisdiction was proper in Tennessee, as Mr. Wells admitted in his affidavit that Defendant maintains an office in Memphis, Tennessee. Plaintiff attached three checks that it had received pursuant to the Agreement from Defendant's Memphis office, dated September 23, 2019, November 1, 2019, and November 15, 2019.

Plaintiff further asserted that records from the Tennessee Secretary of State demonstrate that Defendant was formed as a Tennessee LLC in 2001 with a registered agent for service of process located in Memphis and a "Principal Address" at the same location. According to Plaintiff, however, Defendant suffered from "administrative revocation for failure to make necessary payments to the Tennessee Department of Revenue in 2003 (and presumably thereafter)." In the attached print-out from Tennessee's Secretary of State website, the following was noted:

> I, Tre Hargett, Secretary of State of the State of Tennessee, do hereby certify that that [Defendant], Control # 411033 was formed or qualified to do business in the State of Tennessee on 7/11/2001. [Defendant] has a home jurisdiction of TENNESSEE and is currently on an Inactive – Revoked (Revenue) status.

The print-out indicated that the last time annual reports had been filed for Defendant in Tennessee was on or about March 7, 2003. However, the records also showed that on February 4, 2003, a "Dissolution/Revocation – Revenue" occurred.

Eventually, the trial court held oral argument on the competing motions on April 11, 2023. On April 21, 2023, the trial court entered an order denying Defendant's motion

to dismiss, confirming the arbitration award, and enrolling the arbitration award as a judgment. Defendant thereafter filed a notice of appeal to this Court. Following an order from this Court questioning the finality of the trial court's judgment, on September 8, 2023, the trial court entered an agreed order awarding Plaintiff $12,500.00 in attorney's fees.

## II. ISSUE PRESENTED

Defendant presents the following issue for review: "Whether the trial court properly granted Plaintiff's Petition to Confirm Arbitration Award and For Enrollment of Judgment when Plaintiff failed to produce any evidence indicating jurisdiction in Tennessee. Accordingly, the Order of Judgment of the trial court should be reversed."

## III. STANDARD OF REVIEW

While the genesis of this case is a motion to confirm an arbitration award, the dispositive issue here is whether the trial court erred in denying Defendant's motion to dismiss after concluding that Tennessee was a proper jurisdiction for confirmation of the award. This dispute involves both questions of contract interpretation and personal jurisdiction. Both questions are issues of law that this Court reviews de novo with no presumption of correctness. *See Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006).

## IV. ANALYSIS

### A.

On appeal, although it is somewhat difficult to discern, Defendant first appears to argue that the terms of the Agreement provide that Delaware is the sole venue in which Plaintiff may seek to enroll its arbitration award. Respectfully, we disagree.

Here, the Agreement clearly provides that Delaware law will be utilized to interpret the parties' contract. This is referred to as a choice of law clause. *See Choice-of-Law Clause*, *Black's Law Dictionary* (9th ed. 2009) ("A contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties."). Thus, as to any substantive matters, there is no dispute that Delaware law applies. It is axiomatic, however, that even where a choice of law provision is applicable, Tennessee courts will apply our own procedural law. *See Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016) ("Matters of procedure are governed by the law of the forum. In other words, we apply our own procedural rules even if the law of another state governs the substantive issues."); *see also Gavin v. Club Holdings, LLC*, No. CV 15-175-RGA, 2016 WL 1298964, at *3 (D. Del. Mar. 31, 2016) (holding that "[t]he law of the forum governs procedural matters[,]" but noting an exception not argued here).

- 4 -

The Agreement further provides, that only a single forum may be utilized for the arbitration: Philadelphia, Pennsylvania. An arbitration award that results, however, may be confirmed in "any State or Federal Court having jurisdiction thereof." In general, a contractual provision that selects a particular forum for any dispute is referred to as a forum selection clause and is enforceable and binding on the parties in our courts. *See Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000); *see also Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010). However, "a choice of law provision is distinct from a forum selection clause[.]" *DeLong v. Brian Paul Gen. Partner, LLC*, No. M2021-00075-COA-R3-CV, 2021 WL 5505028, at *4 (Tenn. Ct. App. Nov. 24, 2021).[2] And under Delaware law, courts should grant a motion to dismiss "based upon a forum selection clause where the parties 'use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action.'" *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Eisenbud v. Omnitech Corp. Solutions, Inc.*, 1996 WL 162245, at *1 (Del.Ch. Mar. 21, 1996)).

Here, the parties' choice of law clause clearly provides that Delaware substantive law applies to any dispute concerning the interpretation and application of the Agreement. And the Agreement contains an exclusive forum selection clause as to where arbitration will take place.[3] The Agreement's forum selection clause as to confirmation of that award, however, is not so limited. Rather, it expressly provides that an action to confirm an arbitration award may be prosecuted in any state or federal court with jurisdiction. So, then Tennessee is an appropriate forum pursuant to the express language of the Agreement if it has personal jurisdiction over Defendant.[4] We therefore turn to answer that question.

**B.**

In this case, Defendant properly filed a motion to dismiss based on lack of personal jurisdiction. "A Tenn. R. Civ. P. 12.02(2) motion to dismiss for lack of personal jurisdiction challenges the trial court's ability to proceed with the claim or claims against a defendant." *Gordon*, 300 S.W.3d at 643. "The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant. This burden is ordinarily not a heavy one, personal jurisdiction need only be demonstrated by a preponderance of the evidence." *Id.* (citations omitted). As the Tennessee Supreme Court

---

[2] Defendant cites no Delaware authority suggesting that the opposite is true under Delaware law.

[3] Interestingly, despite Defendant's apparent assertion that the choice of law clause also constitutes a forum selection clause, the choice of law clause and the arbitration forum selection clause designate two different jurisdictions.

[4] There is no question that Tennessee's state courts have appropriate subject matter jurisdiction to confirm an arbitration award. *See generally* Tenn. Code Ann. § 29-5-323 ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion or petition to the court for an order confirming the award, at which time, the court must issue a confirming order, unless the award is modified or corrected . . . , or is vacated . . . .").

has explained,

> The trial court is not required to make findings of fact with regard to a Tenn. R. Civ. P. 12.02(2) motion. Rather, the trial court's responsibility is to determine whether the plaintiff has alleged or presented sufficient facts to survive the motion to dismiss. Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction.
>
> Filing affidavits or other evidentiary materials to support or oppose a Tenn. R. Civ. P. 12.02(2) motion does not convert the motion into a motion for summary judgment. A trial court must take as true all the allegations in the plaintiff's complaint and supporting papers, if any, and must resolve all factual disputes in the plaintiff's favor. A trial court has considerable procedural leeway in addressing the motion. The court should proceed carefully and cautiously, to avoid improperly depriving the plaintiff of its right to have its claim adjudicated on the merits.

*Id.* at 644 (citations omitted).

In general, Tennessee law allows our courts "to exercise jurisdiction upon, inter alia, '[a]ny basis not inconsistent with the constitution of this state or of the United States.'" *Id.* at 646 (quoting *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d at 846, 855 (Tenn. Ct. App. 2000)). As the Tennessee Supreme Court has more fully explained,

> Tennessee courts have generally held that the due process requirements of the Constitution of Tennessee are co-extensive with those of the United States Constitution. *Gallaher v. Elam*, 104 S.W.3d 455, 463 (Tenn.2003); *Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn. 1994). . . .
>
> Approximately sixty years ago, the United States Supreme Court noted that personal jurisdiction could be exercised over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)); *see also J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531–32 (Tenn. 1992). This is a two-part test which requires evaluating whether the requisite minimum contacts are present and whether the exercise of jurisdiction is fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985) . . . .
>
> The defendant's contacts with the forum state need not be physical, and the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action. . . . As part of its evaluation of the reasonableness of exercising jurisdiction,

the court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). . . .

*Gordon*, 300 S.W.3d at 646–47 (some citations omitted).

Tennessee, like other jurisdictions, recognizes two types of personal jurisdiction: specific and general. Specific jurisdiction

may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state. To invoke specific jurisdiction, a plaintiff must show (1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts. The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant "should reasonably anticipate being haled into court [in the forum state]." If the plaintiff can make that showing, the defendant will have the burden of showing that the exercise of specific jurisdiction would be unfair.

*Id.* at 647 (citations and footnote omitted).

In contrast, general jurisdiction

may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state.

*Id.* at 647–48 (citations omitted). To confer general jurisdiction, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *Id.* at 648

(quoting 4 *Federal Practice and Procedure* § 1067.5, at 507). In determining whether general jurisdiction exists, we must consider whether the defendant's contacts are "'continuous and systematic' enough to warrant an assertion of general jurisdiction[,]" which, in turn, "requires ascertaining whether 'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* at 648 (quoting *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 417 (Tenn. 2009)).

But a finding that a defendant has even continuous and systematic contact with our state is not sufficient to support the exercise of general jurisdiction:

> Simply determining the presence of "continuous and systematic" contacts with the forum state is not alone sufficient to constitute the "exceptional case" . . . justifying the exercise of general jurisdiction over a nonresident corporation. Rather, a nonresident defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render them essentially at home in the forum state." Furthermore, subjecting a nonresident defendant deemed to be "essentially at home" in the forum state to general jurisdiction also must accord with "the 'fair play and substantial justice' [that] due process demands."
>
> Therefore, the appropriate determination of whether a nonresident corporation may be subject to general personal jurisdiction in Tennessee is whether the corporation has continuous and systematic contacts with Tennessee so substantial as to render the corporation "essentially at home" here in such a way which does not offend traditional notions of fair play and substantial justice.

*First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 385 (Tenn. 2015) (citations omitted) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014)). While "the paradigmatic forums in which a corporation's contacts with a state render it essentially at home are its state of incorporation and its principal place of business[,]" courts have recognized that in exceptional cases, other states may also meet these stringent requirements. *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 568 (Tenn. 2023) (citations omitted).

Plaintiff does not appear to dispute that Defendant constitutes a "nonresident defendant" for purposes of the analysis of this case.[5] Rather, Plaintiff asserts that the trial court properly invoked either specific jurisdiction or general jurisdiction in this matter. We will consider each type of personal jurisdiction in turn.

---

[5] Specifically, in its brief, Plaintiff explains that the jurisdictional caselaw cited applies to "non-resident corporate defendants such as [Defendant]." As discussed, *infra*, however, Plaintiff does assert that Defendant is subject to personal jurisdiction in Tennessee because it was incorporated here in 2001.

Again, specific jurisdiction is only applicable if Plaintiff's cause of action "arises from or is related to [Defendant's] activities in or contacts with the forum state[.]" ***Gordon***, 300 S.W.3d at 647; *see also* ***Baskin***, 676 S.W.3d at 565 (holding that federal and Tennessee precedent "makes clear that for a court to exercise specific personal jurisdiction, a plaintiff's claim must arise out of or be related to the defendant's forum contacts." (citation omitted)). Plaintiff's brief contains minimal argument as to whether its claim meets this requirement. From our review, Plaintiff asserts that that its claim arises out of Defendant's activities in Tennessee due to a single fact: that Defendant paid Plaintiff for the services at issue under the Agreement from its Tennessee bank account. According to Plaintiff, Defendant's "failure to continue to make such payments directly led to the arbitration and Final Award" and that Defendant should "reasonably anticipate that its ownership of bank accounts in [Tennessee] could result in its being sued in Tennessee." Respectfully, we disagree.

Here, the dispute that led to the arbitration had nothing to do with the checks paid out of the Tennessee office or account—the dispute concerned the alleged breach of the Agreement. That Agreement had nothing to do with Tennessee in any manner. The Agreement was not signed in Tennessee. The work required under the Agreement by Plaintiff was not performed in Tennessee. The litigation underlying the Agreement was not in Tennessee. If the dispute that led to the arbitration had specifically involved the checks or the Tennessee bank account—for example, that the checks were not honored or were somehow fraudulent—perhaps this argument would be more convincing.[6] However, based on the facts before us, we cannot conclude that Plaintiff met its burden to show that ownership of bank accounts by which the non-resident Plaintiff was paid under an Agreement executed and performed entirely outside the state is sufficient to establish that Plaintiff's claim arose out of Defendant's activities and contact with Tennessee.

We next consider whether Plaintiff has established the type of continuous and systematic contacts with Tennessee that would allow our courts to exercise general jurisdiction over Defendant irrespective of the claim asserted. To support this argument, Plaintiff essentially relies on three contacts between Defendant and Tennessee: (1) Defendant's former corporate status in Tennessee; (2) Defendant's administrative office in Tennessee where checks to Plaintiff originated; and (3) Defendant's designation of an agent for service of process in Tennessee. We will consider each of these contacts both in isolation and collectively.

It is true that Plaintiff included documents in the record indicating that Defendant was incorporated as an LLC in Tennessee in 2001. The Tennessee Supreme Court has explained that "corporations are most often subject to general jurisdiction in . . . the state

---

[6] We express no opinion as to whether these facts, if alleged, would give rise to specific jurisdiction in a different case.

of their formal incorporation[.]" *First Cmty. Bank*, 489 S.W.3d at 385; *see also* Tenn. Code Ann. § 20-2-222 ("A court may exercise personal jurisdiction over: . . . A person domiciled in, organized under the laws of, or maintaining the person's principal place of business in, the state as to any claim for relief [.]").

These same records show, however, that Defendant's status as a Tennessee LLC was dissolved or revoked in 2003, a fact that Plaintiff does not dispute.[7] Thus, at the time the petition was filed to initiate this case, Defendant had not been registered as a Tennessee LLC for nearly twenty years. *Cf.* Tenn. Code Ann. § 48-249-605 ("An LLC that has been administratively dissolved continues its existence, but may not carry on any business except that necessary to wind up and liquidate its business and affairs under § 48-249-601 and notify claimants under § 48-249-611.").[8]

Moreover, Defendant submitted its own documents that indicate that Defendant was also incorporated as an LLC in Delaware in 2001. While this document does not provide the current status of Defendant under Delaware law, Mr. Wells's affidavit states that Defendant remains a Delaware LLC. Plaintiff, on the other hand, produced no documents to indicate that Defendant was not a properly incorporated Delaware LLC at the commencement of this action or, indeed, at any time after its 2001 incorporation. The fact that Defendant incorporated in Tennessee in 2001 and, for whatever reason, allowed that status to lapse nearly twenty years ago simply is not sufficient to establish that Defendant is "essentially at home" in Tennessee for purposes of general jurisdiction. *First Cmty. Bank*, 489 S.W.3d at 388.

Next, Plaintiff cites the fact that Defendant admittedly has an administrative office in Tennessee. It is true the Tennessee Supreme Court in *Gordon* characterized "longstanding business" of the type that will support general jurisdiction, as, among other things, "maintaining one or more offices" in the state. *Gordon*, 300 S.W.3d at 648 (quoting 4 *Federal Practice and Procedure* § 1067.5, at 507). Later in *First Community Bank*, however, the Tennessee Supreme Court held that maintaining an office in Tennessee would not be sufficient where the office represented only a small percentage of the company's workforce and "no senior management functions" were conducted from the office. *First Cmty. Bank*, 489 S.W.3d at 387. Here, the proof presented by Plaintiff is merely that Defendant maintains an office in Tennessee for administrative purposes. Plaintiff submitted no proof as to the percentage of Defendant's workforce that works in this office or whether any management functions are conducted there. Indeed, Plaintiff does not even

---

[7] Plaintiff attributes this revocation to the non-filing of annual reports. *See* Tenn. Code Ann. § 48-249-604 (allowing the secretary of state to commence a proceeding to dissolve an LLC if, inter alia, the LLC does not timely deliver its properly completed annual report). It appears, however, that the revocation occurred prior to the final 2003 annual report being filed. As such, we could only speculate as to why Defendant is no longer a Tennessee LLC.

[8] The claims underlying the arbitration award are not related to any effort to wind up or liquidate Defendant.

- 10 -

assert that the Memphis office constituted Defendant's principal place of business at or near the time the underlying Agreement was executed or at any time thereafter; rather, Plaintiff merely asserts that the Memphis office constituted Defendant's "original principal place of business." Plaintiff therefore did not meet its burden to establish that Defendant's contact with Tennessee through this singular office was so systematic and continuous as to justify the exercise of general jurisdiction. *First Cmty. Bank*, 489 S.W.3d at 388.

Finally, Plaintiff points to the fact that in its 2001 corporate filings, Defendant registered an agent and address for service of process and that service on Defendant was accomplished at that address nearly twenty years later. We note, however, that this Court has previously rejected a claim for general jurisdiction on the basis that the defendant company "maintained a registered agent for service of process in Tennessee, and that the registered agent's office is located in Tennessee." *JRM Invs., Inc. v. Nat'l Standard, LLC*, No. W2011-01143-COA-R3-CV, 2012 WL 1956421, at *3 (Tenn. Ct. App. May 31, 2012). Thus, we cannot conclude that the fact that Defendant maintained an office in Tennessee and designated a Tennessee agent for service of process supports the exercise of general jurisdiction. *See also* *Boswell v. Cable Servs. Co.*, No. CV 16-4498, 2017 WL 2815077, at *4 (D.N.J. June 29, 2017) ("[T]he mere fact that Cable Services is registered to do business in New Jersey and appointed an agent to receive process does not mean that it is subject to general jurisdiction in New Jersey.").[9]

Clearly, each of these contacts alone does not support the exercise of general jurisdiction. Even considered together, however, we cannot conclude that these contacts are so systematic and continuous as to make Defendant essentially at home in Tennessee. Here, Defendant was incorporated in Tennessee, but that incorporation was revoked nearly twenty years prior to the petition filed in this matter. Instead, the proof in the record shows that Defendant is now incorporated under Delaware law. Plaintiff also failed to submit proof that Defendant's current principal place of business is in Tennessee. Thus, while Defendant does have an office in Tennessee and did register an agent for service of process here, nothing in the record supports a conclusion that Defendant had "continuous and systematic contacts with Tennessee so substantial as to render the corporation 'essentially at home' here in such a way which does not offend traditional notions of fair play and substantial justice." *First Cmty. Bank*, 489 S.W.3d at 385. The trial court therefore erred in denying Defendant's motion to dismiss for lack of personal jurisdiction. The trial court's decision to confirm the arbitration award, enroll it as a judgment, and award Plaintiff

---

[9] We note that in *Mallory v. Norfolk S. Ry. Co.*, the United States Supreme Court held that a Pennsylvania statute did not violate due process when it explicitly deemed registration to do business in Pennsylvania and designation of an agent for service of process as consent to general jurisdiction. 600 U.S. 122, 134, 143 S. Ct. 2028, 2037, 216 L. Ed. 2d 815 (2023). Plaintiff points to no similarly explicit statute in Tennessee and makes no argument that Defendant specifically consented to general jurisdiction in Tennessee in this manner. Rather, Plaintiff asserts that these facts should be considered contacts with the state for purposes of determining whether general jurisdiction requirements have been met.

attorney's fees is therefore reversed.[10]

## V. CONCLUSION

The judgment of the Shelby County Chancery Court is reversed, and this matter is remanded to the trial court for dismissal. Costs of this appeal are taxed to Appellee, Berkeley Research Group, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[10] Defendant's argument concerning venue is pretermitted. Given our resolution of this appeal, we also respectfully deny Plaintiff's request for attorney's fees incurred on appeal.